CONDITIONED AIR AND REFRIGERATION CO., a California corporation; Bell & Hughes, Inc., a California corporation; Baird Sheet Metal Works, a California corporation; Earl Griffith and John Dyer, a co-partnership doing business under the name of Griffith-Dyer, Plaintiffs,

v.

PLUMBING AND PIPE FITTING LABOR-MANAGEMENT RELATIONS TRUST; Local Union No. 246 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada; Pipe Trades District Council No. 36 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada; Valley Group Negotiating Committee and Paul L. Reeves, Defendants.

No. 1517.

United States District Court
S. D. California, N. D.

Oct. 23, 1956.

Roth & Bahrs, George O. Bahrs, San Francisco, Cal., and Paul K. Doty, Fresno, Cal., for plaintiffs.

P. H. McCarthy, Jr., San Francisco, Cal., for defendants.

JERTBERG, District Judge.

Plaintiffs seek an injunction against defendants to restrain and enjoin them from receiving or accepting any money or thing of value from plaintiffs contrary to the provisions of Section 302, Subsections (A) and (B) of the Labor Management Relations Act, 1947, as amended. 29 U.S.C.A. Section 186.

Plaintiffs Conditioned Air and Refrigeration Co., Bell and Hughes, Inc., and Baird Sheet Metal Works are California corporations.

Plaintiffs Earl Griffith and John Dyer are co-partners, doing business as Griffith-Dyer.

All plaintiffs are engaged in businesses which come under the category of plumbing and pipe fitting. Their employees are members of the defendant Local Union No. 246 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. The plaintiffs are all members of the Associated Plumbing Contractors of Central California, Inc., which is a member of the Northern California Conference of the Plumbing and Heating Industry.

The defendants are Plumbing and Pipe Fitting Labor-Management Relations Trust; Local Union No. 246 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada; Valley Group Negotiating Committee and Pipe Trades District Council No. 36 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, and Paul L. Reeves who is chairman of District Council No. 36 and a trustee of the Labor-Management Relations Foundation hereinbefore mentioned.

That under date of July 20, 1952, the Valley Group Negotiating Committee, predecessor to Pipe Trades District Council No. 36, acting as the agent of Local Union (among others) 246 of the United Association of the Plumbing and Pipe Fitting Industry of the United States and Canada, entered into a collective bargaining agreement with the Northern California Conference of the Plumbing and Heating Industry, Inc., acting on behalf (among others) of the Associated Plumbing Contractors of Central California, Inc. A copy of this agreement is attached as Exhibit "A" to the stipulation of facts filed herein on February 20, 1956. Under this contract the employers, including the plaintiffs, recognized the Union (the Negotiating Committee) as the sole and exclusive collective bargaining representative of all employees performing work covered by the agreement.

That in the summer of 1953 a collective bargaining agreement was entered into between the plaintiffs and the Valley Group Negotiating Committee acting as the agent (among others) of Local Union No. 246. A copy of this agreement is attached to the stipulation of facts marked Exhibit "B". In this agreement the plaintiffs recognized the Union (Negotiating Committee) as the sole and exclusive collective bargaining representative of its employees performing work under the agreement.

That about the month of April, 1954, the Negotiating Committee demanded that plaintiffs sign agreement amending Exhibit "B" attached to the stipulation. Plaintiffs refused to do so and in about the month of May, 1955, the Negotiating Committee caused the employees of plaintiffs to strike, whereupon plaintiffs signed and executed such amendment, a true copy of which is attached to the stipulation of facts and marked Exhibit "C". The amendment to the contract did not change the recognition provisions of the prior contracts. Exhibit "C" among other things provided as follows:

"Add Section 13(a) Pension Plan to Master Contract:

"(A) A pension trust to be known as The Valley Group Pipe Trades Pension Fund shall be created in accordance with the provisions of the Labor Management Relations Act, 1947, as amended.

"(B) The Pension Trust shall be created prior to July 1, 1954.

"(C) Each Individual Employer shall, commencing July 1, 1954 pay into the Valley Group Pipe Trades Pension Fund ten ($0.10) cents per hour for each hour worked, by each employee employed on work covered by this agreement."

\*　　\*　　\*　　\*　　\*　　\*

"Add Section 15(a) to Master Contract:

"(A) Where a labor-management set up exists by agreement between the Local Master Plumbers Association, regardless of its name or organization, and a Local Union affiliated with the Committee requiring that payment or payments be made, all Individual Employers covered by this agreement shall, if and when they perform work in the territorial jurisdiction of such Local make the required payment or payments.

"(B) The nature, amount and time of such payment and the territorial jurisdiction of the Local Union shall be set forth in an appendix to this agreement certified by the Local Union and Local Master Plumbers Association and shall be a part of this agreement.

"Add Section 15(a) to Master Contract:

"The Individual Employers covered by this agreement consent and agree to be bound by the terms of the effective Health and Welfare Trust Agreement, Pension Trust Agreement and Agreement creating any Labor Management set up."

That on or about the 9th day of February, 1954, Associated Plumbing Contractors of Central California, Inc. and certain individual employers who were licensed contractors under the laws of the State of California and the defendant Local Union No. 246 entered into a trust indenture writing entitled "Plumbing and Pipe Fitting Labor-Management Relations Trust." A copy of this trust is attached to defendants' answer and marked Exhibit "B"; on the second day of August, 1955 said trust was amended and its name was changed to "Plumbing and Pipe Fitting Labor-Management Relations Foundation". A copy of said amendment is attached to defendants' answer marked Exhibit "C". This amendment increased the Board of Trustees to 12, 6 to be appointed by the Union and 6 to be appointed by the Associated Plumbing Contractors of Central California, Inc. The amendment also added a paragraph (Article VI–A) on the subject of arbitration.

That a collective bargaining agreement dated June 17, 1955, was entered into between the District Council No. 36 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (successor to the Valley Group Negotiating Committee) acting as the agent (among others) of Local Union No. 246 and Valley Mechanical Contractors Council, Inc., acting as the agent (among others) of Associated Plumbing Contractors of Central California and other individual employers. A copy of this agreement is attached to defendants' answer marked Exhibit "A". Section 16 of said agreement provides:

"Section 16: Labor-Management Relations.

"(A) Where a labor-management set up exists by agreement between the Local Employer, regardless of its name or organization, and a Local Union affiliated with the Union requiring that payment or payments be made, all Individual Employers covered by this agreement shall, if and when they perform work in the territorial jurisdiction of such Local, make the required payment or payments.

"(B) The nature, amount and time of such payment and the territorial jurisdiction of the Local Union shall be set forth in an appendix to this agreement certified by the Local Union and the Local Employer and shall be a part of this agreement.

"(C) The Individual Employers agree to be and are bound by all of the terms and conditions of the effective labor-management set ups and the agreement, trust agreement or charter and by-laws creating and governing any such set up.

"(D) An Individual Employer who works with the tools of the trade shall be irrevocably presumed for all purposes to have worked no more nor less than 160 hours in any month in which an Individual Employer works with the tools of the trade."

Demand was made by District Council No. 36 upon the plaintiffs to execute a collective bargaining agreement in the form of said Exhibit "A". Plaintiffs have, and each of them has, refused to execute such agreement or to pay into the trust any of the sums specified in accordance with the terms of said agreement except the amounts specified in the fifth cause of action set forth in the complaint. District Council No. 36 is prepared to cause the employees of plaintiffs to strike to obtain the inclusion of Section 16 in said Exhibit "A" in a collective bargaining agreement with the plaintiffs.

The answers of defendants admit that Local Union No. 246 is a representative of employees, but deny that as to the employees here involved it is a "representative" of employees who are in an industry affecting commerce within the meaning of Section 302 of the Labor Management Relations Act, 1947, as amended, or at all. Defendants further admit that District Council No. 36 is as to the employees here involved a "representative" of employees within the meaning of said section and that its predecessor Valley Group Negotiating Committee, was such a "representative" but deny that it or said Committee is or was as to the employees here involved "a representative of employees who are employed in an industry affecting commerce within the meaning of said Section."

Under the stipulation of facts filed herein it was stipulated:

"1. That during the calendar year 1955 plaintiff employers made direct purchases of goods and materials from outside the State of California in the amounts set opposite their names. Plaintiffs made purchases in California of goods and materials originating outside the State of California in the amounts set opposite their names; and plaintiffs furnished services and materials to firms engaged in commerce in the amounts set opposite their names, to wit:

| | Direct Purchases | Indirect Purchases | Services |
|---|---|---|---|
| Baird Sheet Metal Works | $240,683.24 | $ 29,389.00 | $10,919.29 |
| Bell and Hughes | 127,472.19 | 68,109.92 | 46,372.66 |
| Conditioned Air | 213,351.25 | 199,589.16 | 45,681.06 |
| Griffith-Dyer | 161,464.15 | 47,032.06 | 49,018.24." |

The cause came on for trial on the 8th day of August, 1956. The plaintiffs were represented by Roth and Bahrs, George O. Bahrs, appearing, and Paul K. Doty. The defendants were represented by P. H. McCarthy, Jr. Each party moved for a summary judgment based upon the pleadings and the stipulation of facts on file. It was stipulated that the motions and the trial on the merits would

be submitted based upon the pleadings and the stipulation of facts. The cause was then argued by counsel for the respective parties. All matters were taken under submission by the court.

At the outset, the defendants contend that this court lacks juridiction of the cause for two reasons: first, that the dollar volume of interstate business transacted by each plaintiff is too small to adversely affect interstate commerce, and that in this type of suit the volume of business of the individual plaintiffs may not be aggregated; second, that the complaint fails to allege that the amount in controversy exceeds the sum or value of $3,000 as required by Section 1331, U.S.C. Title 28.

 It is my conclusion that the volume of business transacted by each plaintiff as set forth in the stipulation is sufficient to establish that the employees of each plaintiff are employed in an industry affecting commerce within the meaning of Section 302 of the Labor Management Relations Act, 1947, as amended. N. L. R. B. v. Fainblatt, 306 U. S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014. With respect to failure of the complaint to allege that the sum or value in controversy exceeds $3,000, I am satisfied that under the provisions of Section 302(e) of the Labor Management Relations Act, 1947, as amended, such an allegation is not required. Said section reads as follows:

"The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–110 and 113–115 of this title."

The fact that the jurisdictional amount of $3,000 was expressly excluded from the provisions of Sections 301 and 303 of the Labor Management Relations Act, 1947, as amended, is not persuasive that the failure to make such exclusion in Section 302 operates to include such jurisdictional requirement. Sections 301 and 302 relate to suits for damages by private persons. Section 302(a) and (b) make it unlawful to do the things proscribed by the provisions thereof. It is public rights which are being protected, and in my opinion the provisions of Section 302(e) grant jurisdiction to this court without regard to the sum or value in controversy if the volume of commerce of each plaintiff is not de minimis.

We will now pass to the basic issues which remain. Section 302(a) of the Labor Management Relations Act, 1947, as amended, provides as follows:

"It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce."

Section 302(b) of the same Act provides as follows:

"It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

Section 302(c) of the same Act states that:

"The provisions of this section shall not be applicable (1) * * * ; (2) * * * ; (3) * * * ; (4) * * * ; or (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose

of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities."

Section 302(d) provides as follows:

"Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both."

There is no dispute between the parties over the facts that the collective bargaining agreement (Exhibits "B" and "C" attached to the stipulation of facts) did and that the collective bargaining agreement (Exhibit "A" attached to the defendants' answer) does provide that each individual employer covered by the collective bargaining agreement, on work covered by said collective bargaining agreement, shall pay into the Plumbing and Pipe Fitting Labor-Management Relations Foundation (a trust) (Exhibits "B" and "C" attached to defendants' answer) ten ($0.10) cents per hour for each hour worked by each employee of each individual employer covered by the said collective bargaining agreements. It is also clear that the Valley Group Negotiating Committee was a labor organization and was recognized by the employers as the sole and exclusive bargaining representative of all employees of the individual employers performing work covered by the agreement and that District Council No. 36 (the successor of the Committee) a labor organization, was recognized as the sole and exclusive collective bargaining representative of the individual employer performing work covered by the collective bargaining agreement.

The Plumbing and Pipe Fitting Labor-Management Relations Foundation was created by, and its trustors are, Associated Plumbing Contractors, Inc. (a nonprofit membership corporation composed of individual employers, members and non-members of said Association) and Plumbers and Steam Fitters Local Union No. 246 (a labor organization, a local Union).

The collective bargaining agreement (Exhibits "B" and "C" attached to the

stipulation) provide "where a labor-management set up exists by agreement between the local Master Plumbers Association, regardless of its name or organization, and a local Union affiliated with the Committee requiring that payment or payments be made, all individual employers covered by this agreement shall, if and when they perform work in the territorial jurisdiction of such Local make the required payment or payments," and that "the individual employers covered by this agreement consent and agree to be bound by the terms of the effective Health and Welfare Trust Agreement, pension trust agreement and agreement creating any labor-management set up." The collective bargaining agreement (Exhibit "A" attached to defendants' answer) contains similar provisions.

The Plumbing and Pipe Fitting Labor-Management Relations. Foundation does not conform to the requirements of Section 302(c) (5) and the defendants do not contend that it does. The defendants maintain that the trust is not a "representative" within the meaning of the provisions of Section 302; that the trust is a separate entity and that Section 302 does not outlaw or forbid payments to and acceptance by those persons and entities who or which are not "representatives". Defendants further point out that six of the trustees of the trust are selected by the employers and that six are selected by Local Union No. 246, which fact prevents the Local Union from dominating and controlling the actions of the trustees.

As noted above, Section 302 makes it unlawful for any employer to pay or deliver or to agree to pay or deliver any money or other thing of value to any representative of any of his employees or for any representative of any employees to receive or accept or agree to receive or accept from the employer any money or other thing of value.

The Labor Management Relations Act of 1947, as amended, states: "The terms 'commerce', 'labor disputes', 'employer', 'employee', 'labor organization', 'repre-

sentative', 'person', and 'supervisor' shall have the same meaning as when used in subchapter II of this chapter as amended by this chapter." Section 142, subsection 3, U.S.C.A. Title 29.

Section 152, subsection 4, Title 29 U.S.C.A., states: "The term 'representatives' includes any individual or labor organization." Subsection 5 of Section 152 states: "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

The Supreme Court of the United States had occasion to interpret the meaning of the word "representative" as used in Section 302. United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335. The Court held that the term "representative" in section 302 is not limited to the exclusive bargaining representative of the employees, but includes any person authorized by the employees to act for them in dealings with their employers. The Court also stated that a narrow reading of the term "representative" would substantially defeat the purposes of the Act.

It is conceded that the Valley Group Negotiating Committee was, and that District Council No. 36 is a representative of employees of the plaintiffs within the meaning of Section 302. It is further conceded that Local Union No. 246, one of the founders of the Trust, is a "labor organization". The question remains, however, whether Local Union 246 is a "representative" within the meaning of Section 302. It is true that the Collective Bargaining Agreements state that the employers recognize the the Valley Group Negotiating Committee under one contract, and the District Council No. 36 in the other contract, as the exclusive bargaining representative of the employees of the employers. The Court, however, is not bound by such

declaration, but must determine from the documents in this case the true and legal status of Local No. 246. In executing the collective bargaining agreements, the Valley Group Negotiating Committee and District Council No. 36 expressly acted as agent of Local 246 and other local unions.

Pertinent parts of the collective bargaining agreement dated July 1, 1955 (Exhibit "A" attached to the answer of the defendants) read as follows:

"Section 1: Definitions

"(A) The term 'Union' as used in this agreement means the District Council No. 36 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada Successor to the Valley Group Negotiating Committee acting as the agent of Local Unions No. 246, 365, 437, 492, 503, 607, and 662 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada.

\* \* \* \* \* \*

"(D) The term 'Local Union' as used in this Agreement means any of the Local Unions enumerated in subsection (A) hereof and any other Local Union which may hereafter authorize the Union in a manner and form acceptable to said Union to act as its agent and to bind it for the purpose of this agreement.

"Section 2: Warranties.

"1. It is agreed that this agreement shall be binding upon the Union and Local Unions set out in Section 1(A) hereof, and upon the Employer, Local Master Plumbers Associations set out and individual employers who are members of any Local Master Plumbers Association set out in Section 1(B) hereof, and upon the heirs, executors, administrators, successors, purchasers, and assigns of the Individual Employers covered by this agreement.

"2. The Union warrants that it is authorized to bind the Local Union set out in Section 1(A) hereof.

\* \* \* \* \* \*

"Section 5: Union Membership

"(A) All Employees covered by this agreement shall be required as a condition of employment to apply for and become members of and to maintain membership in the Local Union, with jurisdiction within thirty-one days following the beginning of their employment under this agreement or the effective date of this sub-section (A) whichever is the later. This section shall be enforceable to the extent permitted by law.

\* \* \* \* \* \*

"Section 6:

"Subsection (B) Individual Employers must secure all Journeymen and Apprentices through the employment office of the Local Union with jurisdiction at the site of the work, and the Union agrees that the Local Union will furnish competent Journeymen and Apprentices within forty-eight (48) hours when available.

"1. The Individual Employer may call for a specific employee by name to be dispatched and the Local Union shall dispatch such employee provided that such employee is available, and

(a) is a preferred employee as defined in Section 6(A) 1, and

(b) has not been employed outside of the Territorial jurisdiction of the Local Union within which the job site is located within 90 days of the employer calling for him by name except that this subsection (b) shall not apply to an employee who has worked outside the territorial jurisdiction of the Local Union under paragraph (C) 2 of Section 6 within such 90 day period.

"2. In the event that employees with a preference as herein defined are not available to fill vacancies,

then the Local Union will undertake to supply the employers with competent and satisfactory employees. Neither as to such undertaking, nor as to any other portion of this agreement, shall any employee be discriminated against by reason of either membership in or non-membership in any Union.

"3. The Local Unions will maintain appropriate registration facilities without discrimination either in favor of or against such applicants by reason of membership in or non-membership in any Union.

\* \* \* \* \* \*

"(C) The provisions with respect to preference in employment by reason of prior employment are subject to the following limitation:

"1. That whenever any test is required of any workman by any Individual Employer, the Local Unions upon being requested to furnish men for such test will dispatch only workmen who are experienced in the type of work for which the test is required, unless otherwise expressly agreed to by the Individual Employer.

"Before any workman commences the test, he shall be placed on the payroll of the Individual Employer. Any workmen failing to pass the test shall be paid straight time for the test period but in no event less than four (4) hours at straight time.

"2. On work contracted for by an Individual Employer outside the jurisdiction of the Local Union in which the Individual Employer's shop is located such Individual Employer may send one man to said job from the territorial jurisdiction of such Local Union; provided, however, that the Individual Employer shall notify the Local Union with territorial jurisdiction over the area in which the job site is located of the name of the Employee and the location of the job prior to the time the Employee is sent into the area and that the Employee before reporting to the job site, shall report to the Local Union having territorial jurisdiction over the area in which the job site is located in person, by telephone, by telegram, or in writing and the Local Union shall dispatch him. Adjacent Local Unions may enter into more liberal local understandings to cover jobs of short duration.

"Section 7: Competency and Qualifications

"The Individual Employer shall be the sole judge of the competency of his employees and may discharge any employee for cause. The Local Unions shall be the sole judge of the qualifications of their members for membership in the Local Union.

"Section 8: Cessation of Work

"It is mutually agreed and understood that during the period when this agreement is in force and effect the Individual Employer will not lockout his employees and the Union will not authorize any strikes, slowdown or stop work, in any dispute, complaint or grievance arising under the terms and conditions of this agreement, except such disputes, complaints or grievances as arise out of the failure or refusal of the Individual Employer to comply with the provisions of the Sections 5, 6, 13, 14, 15 and 16 hereof. As to any such Individual Employer who shall fail or refuse to comply with the provisions of these Sections or any of them, so long as such failure or refusal continues, it shall not be a violation of this agreement if the Union or Local Union withdraws its members who are subject hereto from the performance of work for such Individual Employer and such withdrawal for such period shall not be a strike or work stoppage within the terms of this agreement. Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees but no

such employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform work.

\* \* \* \* \* \*

"Section 10: Jurisdictional Disputes.

"In the event of any dispute between Local Unions of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada as to the jurisdiction of the work performed by Individual Employers, such dispute shall be referred to, and settled by the United Association. In the event of any dispute as to jurisdiction of the work covered by the terms of this agreement by reason of any such work being claimed by a union or unions other than the United Association, such dispute shall be referred and settled in accordance with any procedure or agreement for the settlement of jurisdictional disputes to which the United Association is a party or by which it is bound.

"It is agreed that this agreement shall constitute an original assignment of work to the employees covered hereby on work performed by the Individual Employers covered hereby. In either event, the parties hereto agree that there will be no slow-down or stoppage of the work and each agrees that the decisions of the authorities stipulated herein shall be final and binding upon them.

\* \* \* \* \* \*

"Section 16: Labor-Management Relations

(A) Where a labor-management set up exists by agreement between the Local Employer, regardless of its name or organizations, and a Local Union affiliated with the Union requiring that payment or payments be made, all Individual Employers covered by this agreement shall, if and when they perform work in the territorial jurisdiction of such Local make the required payment or payments.

"(B) The nature, amount and time of such payment and the territorial jurisdiction of the Local Union shall be set forth in an appendix to this agreement certified by the Local Union and the Local Employer and shall be a part of this agreement.

"(C) The Individual Employers agree to be and are bound by all of the terms and conditions of the effective labor-management set ups and the agreement, trust agreement or charter and by-laws creating and governing any such set up.

"(D) An Individual Employer who works with the tools of the trade shall be irrevocably presumed for all purposes to have worked no more nor less than 160 hours in any month in which an Individual Employer works with the tools of the trade.

"Section 17: Joint Conference Board

"(A) In those areas in which labor-management set ups exist, such labor-management set up shall function as a Joint Conference Board with all the powers, rights, duties and obligations hereinafter lodged in the Joint Conference Board.

"(B) It is the intention of the parties to this agreement to settle problems that may arise on a local level; however, in order to bring about general recognition and enforcement of this agreement, the parties hereto shall proceed to set up a Joint Conference Board, of four (4) members. Two (2) members shall be selected by the Local Union and two (2) by the Local Employer.

"(C) Contemporaneously with the execution of this agreement the Local Employer shall notify the Local Union and the Local Union shall notify the Local Employer in writing of their respective Board members.

"(D) The Joint Conference Board shall agree upon and determine the time and place of meeting, the rules of procedure, shall elect a chairman and a secretary from its membership, and shall determine upon all other details necessary to promote and carry on the business for which it is appointed.

"The function of the Joint Conference Board shall be:

"1. To establish the general recognition and enforcement of the wages, hours, and working conditions of the agreement.

"2. To hear and adjust disputes or differences which may arise in the enforcement or interpretation of this agreement except those under Sections 5, 6, 13, 14, 15 and 16.

"3. To promote the mutual interest of the parties to this agreement.

"4. Pending the decision upon any dispute or grievance, work shall be continued in accordance with the provision of this agreement.

"(E) If the Joint Conference Board, after meeting, cannot agree on any matter referred to it, the members thereof shall choose an impartial person who shall act as an additional member of the Joint Conference Board and participate in the making of a decision by the majority of the members. Said decision shall be rendered within ten days after submission and shall be final and binding on all parties hereto. Any expense of employing such impartial person to sit shall be borne equally by the Local Employer and Local Union.

"(F) The Joint Conference Board shall meet at the time and place set by the Local Employer if an Individual Employer is the complaining party or at the time and place set by the Local Union if a Local Union or employee is the complaining party. The place of the meeting shall be in the jurisdiction of the Local Union in which the dispute arose. The time shall be not less than five (5) days or more than ten (10) days from the date the dispute, complaint or grievance is called to the attention of the other party. Notice of time and place shall be given at the time the dispute, complaint or grievance is called to the attention of the other party."

Similar provisions are contained in the collective bargaining agreements negotiated by the Valley Group Negotiating Committee (Exhibits "A", "B" and "C", attached to stipulation of facts).

■ I am satisfied from an analysis of the quoted provision of the collective bargaining agreements that Local Union No. 246 is in fact and in law a party to such agreements, and therefore a "representative" of the employees of the plaintiffs within the meaning of Section 302.

Is the Plumbing and Pipe-fitting Labor-Management Relations Foundation a "representative" of the employees of plaintiffs? The Trust recites that "Whereas there is presently no effective machinery whereby the provisions of applicable collective bargaining agreements can be policed and enforced and whereby the general public can be protected from imperfect, improper and unsanitary installation, poor or shoddy materials or poor or improper work and workmanship, and

"Whereas, the absence of such effective machinery is producing chaos in the Plumbing and Pipe-fitting industry and is endangering the wages, rates of pay, hours of labor and other conditions of employment of the employees and destroying the trust and confidence of the public in the employers and in the plumbing and pipe-fitting industry,

"Now, therefore, to correct this situation, to protect the wages, rates of pay, hours of labor, and other conditions of employment of the employees, to restore the trust and confidence of the public in the employers and the plumbing and pipe-fitting industry, this Trust is created."

The stated purposes of the Trust are to perform and perfect "an organization for the purpose of improving the relationship between the employers and employees making up the plumbing and pipe-fitting industry and the general public, and to enforce the collective bargaining agreement and the provisions thereof covering work within the jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry of the United States and Canada, to protect the wages, rates of pay, hours of labor, and other conditions of employment of the employees in the plumbing and pipe-fitting industry and to protect the general public from imperfect, improper and unsanitary installations, poor or shoddy materials and poor or improper work and workmanship."

The only specific purposes of the Trust are to enforce the collective bargaining agreement and the provisions thereof, covering work within the jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry of the United States and Canada, and to protect the wages, rates of pay, hours of labor and other conditions of employment of the employees in the plumbing and pipe-fitting industry. The other stated purposes are vague and uncertain.

The Trust agreement states that the Board of Trustees is authorized to, and shall have the power to pay out of the assets of the Trust, at the sole and exclusive discretion of the trustees, for, among other things, "to protect the wages, rates of pay, hours of employment, and other conditions of employment of the employees in the plumbing and pipe-fitting industry, * * * to enforce the collective bargaining agreements and the provisions thereof, covering work within the jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry of the United States and Canada." The Board of Trustees is authorized to "employ such executive, administrative, accounting, clerical, sec-

retarial and legal personnel and other employees and assistants, as may be necessary in connection with the carrying out of the Trust and to pay or cause to be paid, out of the Trust the compensation and expenses of such personnel and assistants, the cost of office space, furnishings and supplies and other expenses of the Trust."

■■ It must be presumed that the Trust will carry out the specifically stated provisions for which it was formed, and which are above quoted. The Trust comes within the term "labor organization" as defined in Subsection 5 of Section 152, Title 29 U.S.C.A., and is a "representative" of the employees under Section 4 of Section 152. It is my view that the Trust is a "representative" of the employees of the plaintiffs. It is clear under the decision of United States v. Ryan, supra, that a "representative" is not limited to the exclusive bargaining agent of the employees. The fact that the Trust agreement contains an arbitration clause cannot operate to validate acts prohibited by Section 302.

■ It is clear to me that if the plaintiffs were required to make the payments in question to Local Union 246, such payments and receipt would be forbidden by Section 302. The fact that the payments are to be made to the Trust does not, in my opinion, alter the situation, since the Trust under the documents under review, is likewise a "representative" of the employees of the plaintiffs. Furthermore, it is my view that the prohibition in Section 302 forbidding the payment of money or other thing of value to a representative, or the receipt thereof by a representative, is not limited to cash or tangible property. The expression, "other thing of value" would include the benefits flowing from the use or application of the money paid. Under the Trust in question, the payments required to be made by the plaintiffs are to be devoted to enforcement of the collective bargaining agreements, to protect wages, hours of labor, conditions of employment, and to hire personnel,

furnish office space, et cetera, to carry out such purpose. It is my view that this constitutes payment of a thing of value to Local 246. The fact that the control of the Trust is equally divided between the employers and the representatives of the employees does not change the situation in view of the provisions of the Trust agreement.

The defendants have cited the cases of United Marine Division I. L. A. Local 333, A. F. of L. v. Essex Transportation Company, 3 Cir., 216 F.2d 410; Rice-Stix Dry Goods Company v. St. Louis Labor Health Institute, D.C.E. No. 22 LRRM 2528; People v. Cilento, 207 Misc. 914, 143 N.Y.S.2d 705; and Bay Area Painters and Decorators Joint Committee, Inc., v. Orack, 102 Cal.App.2d 81, 226 P.2d 644. In the Essex case, payments by the employer were to be made to six trustees of a welfare fund. From aught that appears in the opinion of the Court the Trust providing for the welfare fund was in strict compliance with the requirement of Section 302(c) (5). Admittedly, the Trust here involved does not so comply. In the Rice-Stix case, the Court concluded that the Health Institute was a corporation independent of the labor union which was a representative of the bargaining unit of the employees of the plaintiff. The fund created was to be used for health purposes. In neither of the cases was there a trust agreement containing provisions such as the quoted provisions of the Trust here in question. The Cilento case involved a construction of the Penal Statute of the State of New York, and in my opinion, the correct decision was reached under the facts and the applicable law.

In the Orack case, the Court determined that the agreement in question did not constitute a monopoly or a restraint of trade under the law of the State of California. It did not involve Section 302 of Title 29 U.S.C.A.

My attention has been called to a memorandum order made by the Honorable Edward P. Murphy, United States District Judge, Northern District of California, in the case of Sheet Metal Contractors Association of San Francisco v. Sheet Metal Workers International Association, 145 F.Supp. 626. In his memorandum order Judge Murphy stated that the purposes for which the Board (Joint Industry Board) was established are not entirely clear. I have had the opportunity of examining the Trust Agreement establishing the Joint Industry Board. I find nothing in the agreement to indicate that it was any purpose of the Joint Industry Board to enforce the collective bargaining agreement between the Union and the employees of the plaintiff or to protect the wages, rates of pay, hours of labor or other conditions of employment of such employees, or to expend its fund for such purposes.

I am aware that labor-management plans are to be encouraged. I recognize that great strides have been made in such fields to the benefit of labor, management and the public. As a Judge, however, as stated by counsel for the defendant, my duty is to determine whether the cloth is cut to fit the pattern laid down by the Legislature. It is not for the Court to push or pull the pattern to fit the cloth already cut or to trim the cloth already cut to fit the pattern.

Accordingly, the motions for summary judgment are denied and judgment is ordered for the plaintiffs.

Counsel for the plaintiffs are directed to prepare and file findings of fact, conclusions of law, and form of judgment, in accordance with the rules of this Court.

The Clerk of this Court is directed to forthwith mail copies of this order to respective counsel.