**C. C. SANDERS, George R. Smith, James Palmer, George Husk, C. O. Huff, Trustees of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America Health and Welfare Fund, Plaintiffs,**

v.

**William C. BIRTHRIGHT, Defendant.**

**No. IP 58-C-305.**

United States District Court
S. D. Indiana,
Indianapolis Division.

April 27, 1959.

Schwartz, O'Hare, Sweeney & Sullivan and Boaz Siegel and Rolland R. O'Hare, Detroit, Mich., Schortemeier, Eby & Wood, William J. Wood, Indianapolis, Ind., for plaintiffs.

Clyde P. Miller, Indianapolis, Ind., for defendant.

HOLDER, District Judge.

The action was commenced on November 19, 1958 on the initiative of five of eight trustees of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America Health and Welfare Trust Fund against William C. Birthright, an individual.

George Husk, a trustee and administrator of the Trust Fund, was appointed as such by William C. Birthright, the long time president of the labor organization, Journeymen Barbers, Hairdressers, Cosmetologists, and Proprietors International Union, AFL–CIO.

During the year 1958, George Husk, who was a member of said Union and while serving as such trustee and as administrator of the Trust Fund, vigorously campaigned and submitted himself as an opposition candidate and nominee for president of the International Union against the incumbent, William C. Birth-

right. The convention spoke, Mr. Husk was defeated and Mr. Birthright was re-elected.

The conqueror, on or about November 14, 1958, not as an individual but as president of the International Union, notified all of the trustees of the Trust Fund in writing that their services as trustees of the Trust Fund were terminated and ordered them to surrender control of the office, its staff, books, records, and all other assets of the Trust Fund to Joseph N. DePaola. Thereafter on November 17, 1958, he attempted by threat and coercion to remove those in charge of the office and seize the assets and has threatened to carry out such purpose in the future. This was done with the intent and purpose of disposing of Mr. Husk from his source of influence within the members of the Trust Fund and the International Union. It was not done for the purpose of the defendant receiving or accepting any money or thing of value from employers of their employees within the meaning of Section 302 of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 186). It was done for the purpose of the International Union to appoint new trustees of the Trust Fund and who were to administer it in accordance with the Trust Fund Agreement.

The action alleges other facts necessary for injunction relief and requests a restraining order, interlocutory injunction and permanent injunction among other things.

The Court refused to grant a restraining order without notice but issued an order for hearing thereon for November 24, 1958 after the parties stipulated to maintaining trustees of the Trust Fund as such trustees or as de facto trustees pending the Court's disposition of the hearing.

The hearing was had and concluded and the parties submitted briefs in accordance with the Court's schedule.

The defendant raises a number of legal questions the first of which the Court believes disposes of the litigation. The defendant says the Court does not have jurisdiction of the subject matter.

The Trust Fund has as its situs the State of Indiana, part of the trustee plaintiffs are citizens and residents of the State of Indiana and part of the trustee plaintiffs are citizens and residents of states other than the State of Indiana. The defendant and the International Union are citizens and residents of the State of Indiana. This is no diversity action and jurisdiction cannot be thus grounded for the Court to base its power to grant the relief requested.

The plaintiffs assert jurisdiction on the ground that the Trust Fund was established pursuant to Section 302(c) of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 186(c); is itself in an industry affecting commerce as defined in that act; and is subject to regulation under the Welfare and Pension Plans Disclosure Act of 1958 (29 U.S.C.A. § 301 et seq.).

The trust agreement was executed September 1, 1954 for the purpose of creating the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America Health and Welfare Trust Fund to provide payment of premiums for group insurance and other welfare benefits, and all expenses connected with the administration of said fund, and to cover the area or jurisdiction of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America.

The agreement further provided:

"Article I: Parties
"The Parties to this Trust Agreement are the Proprietor, the Trustees and the Union.
"1. Proprietor.
"The Proprietor is those employers, either members or non-members of Guilds or Employer Organizations, employing members of the Union (a) who have executed or may at any time hereafter execute collective bargaining contracts with the Union, by the terms whereof they are

now or may hereafter become obligated to provide health and welfare benefits for those of their employees subject to such contracts, or (b) who, by the nature of their occupation are classified neither as employer nor employees but are now, or may become at any time hereafter members of the Union, who, by themselves or by their duly authorized representatives, do now or at any time hereafter agree in writing incorporated as a part of this Trust Agreement to be bound by the provisions hereof as of the date specified in such writing.

"2. Trustees.

"The Trustees are Frank Blazina, C. C. Sanders, George R. Smith, and James Palmer (appointed on behalf of the Proprietor), and George Husk, John B. Robinson, C. O. Huff, and Macel Anderson (appointed on behalf of the Union), and their successors as Trustee. Trustees appointed on behalf of the Proprietor are hereinafter called Proprietor Trustees, and the Trustees appointed on behalf of the Union are herein called Union Trustees. There shall at no time be more than five (5) nor less than three (3)

Trustees representing the Proprietor, or no more than five (5) nor less than three (3) Trustees representing the Union; and the representatives of each party herein referred to shall at all times be maintained equally.

"The Trustees, in their collective capacity, shall be known as the Board of Trustees of The Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America Health and Welfare Fund, and may conduct the business of the Trust and execute all instruments in that name.

"3. Union.

"The Union is one or more Local Unions within the area or jurisdiction of, chartered by, and constituting The Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, that now, or at any time hereafter applies to, and is accepted by the Trustees as a party hereto."

The only reference to a Trust Fund in the Labor Management Relations Act of 1947 is in Section 302 (29 U.S.C.A. § 186) the pertinent parts of which are quoted in footnote [1].

1. "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.

"(c) The provisions of this section shall not be applicable (1) * * *; (2) * * *; (3) * * *; (4) * * *; or (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents):

Provided, That (A) such payments are held in trust for the purpose of paying, * * *, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to de-

The trust agreement entered into on September 1, 1954 in all ways complied with the statutory requirements set out in Section 302(c)(5) that section being set out in its entirety in footnote 1. Article III of the agreement sets out the conditions under which the trustees may disburse trust funds and to what beneficiaries.

"Article III: Application of the Trust Fund

"1.   Disbursement of the Trust Fund.

"The Trustees shall deposit all monies received by them as Trustees in such banks as they may select for that purpose, without liability on their part to deposit or invest such monies to produce an income.

"The Trust Fund shall be disbursed for the following purpose:

"(a) To pay or provide for the payment of all premiums for group insurance and other welfare benefits procured by the Trustees pursuant to the provisions of this Agreement; and

"(b) To pay all reasonable and necessary expenses incident to the administration of the Insurance Fund, including the employment of legal counsel, auditors, clerical personnel, administrative personnel and other third parties; the leasing of office premises; and the purchasing or leasing of such materials, supplies and equipment as the Trustees,

in their discretion, deem proper and necessary for the sound and efficient administration of the Trust Fund; and

"(c) To provide, in the discretion of the Trustees, fidelity bonds issued by a reputable insurance company in amounts determined by the Trustees for each of the Trustees and for each other person authorized to handle the monies due and constituting the Trust Funds.

"However, the Trustees are authorized to accumulate such a reserve fund as they, in their discretion, deem necessary or expedient to accomplish the purpose of this Trust Agreement.

"2.   Individuals to be Insured.

"Individuals eligible for group insurance and other welfare benefits are:

"(a) Employees of Proprietors who have executed collective bargaining contracts with the Union.

"(b) Proprietors who, by the nature of their occupation, are eligible for and are members of the Union.

"(c) Active full-time employees of the Trustees.

"(d) Employees of the Union, not herein otherwise specified.

"3.   Group Insurance Benefits.

"The Trustees, as the policyholder, shall make application to an in-

---

cide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees

are made to a separate trust which provides that the funds therein cannot be used for any purpose other than paying such pension or annuities.

"(d) Any person who willfully violates any of the provisions of this section shall upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

"(e) The district courts of the United States * * * shall have jurisdiction, for cause shown, * * * to restrain violations of this section, * * *.

"(f) * * *.

"(g) * * *."

surance carrier or insurance carriers, permitted to insure members anywhere in the United States of America or its territorial possessions, and the Dominion of Canada where insurance coverage is required under the terms and provisions of this Trust Agreement, to procure a group or blanket policy or policies providing one or more of the following: life insurance, accidental death and dismemberment insurance, weekly indemnity insurance, hospital expense insurance, surgical expense insurance and other medical care insurance coverage for those identified in the preceding paragraph two (2) herein entitled 'individuals to be Insured,' and, if possible, their dependents, in such amounts as the Trustees in their discretion may determine; and such other welfare benefits or insurance coverages as the Trustees may deem warranted.

"All benefits provided by the group insurance contract shall be payable to the aforesaid individuals to be insured, or their beneficiaries, except that the dividends, if any, shall be payable to the Trust Fund. Upon acceptance of said group insurance contract by the Trustees upon the advice of legal counsel, the Trustees shall hold said contract under the provisions of this Trust Agreement; and the terms of said contract shall be binding upon all parties."

Article IV, Section 5 requires an annual audit of funds and availability to inspect the result of such audit.

"Article IV: Administration of the Insurance Fund

"5. Audit and Report.

"The Trustees shall keep at the place of business of the Trust Fund a copy of the group insurance contract, or contracts, and true and accurate books of account, and records of their transactions as Trustees. An audit of the Insurance Fund shall be made annually, or, in the discretion of the Trustees, more frequently, by a certified public accountant. A statement of the result of such audit shall be made available for inspection by all interested parties at the place of business of the Trust Fund.

"The Trustees shall furnish each local participating Guild and each local participating Union, or their Local Welfare Agent if such has been agreed upon, periodical reports as to eligible members, delinquent contributions and lapsed policies."

Article IV Section 2 in the last paragraph requires arbitration in the event that the trustees are unable to agree upon the exercise of their powers.

"Article IV: Administration of the Insurance Fund

"In the event the Trustees are unable to agree upon the exercise of any of their powers, they shall attempt to agree upon the appointment of an impartial umpire to settle such disagreement. If the Trustees are unable to agree upon an impartial umpire within thirty (30) days from date of any such disagreement, then either a Proprietor Trustee or a Union Trustee may petition the District Court of the United States for the Southern District of Indiana, Indianapolis Division, to appoint an impartial umpire. The decision of an umpire, however designated, shall be binding upon all parties concerned."

Article I Section 2 requires that at all times the number of trustees representing the Proprietor and the number of trustees representing the Union be equal.

From the aforegoing parts of the trust agreement, it is evident that the Trust Fund was established in accordance with the statute. It cannot be contended that payment from the employers to the trustees of the Fund is in violation of Section 302(a) or (b) on the premise that the trust agreement did not conform to the requirements of the statute.

The res of the trust or assets of the trust consists solely of monies paid into the trust by the employers of the employees belonging to the Union. The trust was established in conformance with the requirements of Section 302(c)(5) of the Labor Management Relations Act of 1947.

Section 302(b) of the Labor Management Relations Act is directed at prohibiting certain practices of employee representatives affecting labor management relations.

The question before this Court is whether the practices of the defendant in firing the trustees of the Union Welfare Fund, attempting to seize the property of the Trust Fund and administer the Trust Fund Agreement are such practices as are forbidden in labor management relations under the act.

The congressional purpose of Section 302 was to prevent employers from tampering with the loyalty of Union officials and disloyal Union officials from levying tribute upon employers to the detriment of labor management relations (Judge Hand, United States v. Ryan, 2 Cir., 225 F.2d 417, adopted by Supreme Court in United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335). This type of activity was made illegal in subsections (a) and (b) of Section 302. Subsection (b) prohibits any representative of any employees who are in an industry affecting interstate commerce to receive or accept or agree to receive or accept from the employer of such employees any money or other thing of value. Subsection (e) of Section 302 provides that for cause shown the District Court of the United States shall have jurisdiction to restrain violations of Section 302.

It is obvious that some bona fide transfers of money or things of value could arise between the employer and the representatives of his employees which would technically fall under the broad prohibition of 302(b). In keeping with the basic purpose of the act, Congress therefore included subsection (c) which makes certain exceptions to 302(b). Such an exception is 302(c)(5) which authorizes the employer to pay money or things of value into a Trust Fund for the health and welfare of his employees, subject to certain statutory requirements.

The basic purpose of Section 302 was not solely to create welfare funds or to administer them. The Supreme Court, by Mr. Justice Clark in United States v. Ryan, 1956, 76 S.Ct. 400, 404, stated:

"Nor can it be contended that in this legislation Congress was aiming solely at the welfare problem. Such a suggestion is supported neither by the legislative history nor the structure of the section. The arrangement of § 302 is such that the only reference to welfare funds is contained in § 302(c)(5). If Congress intended to deal with that problem alone, it could have done so directly without writing a broad prohibition in subsections (a) and (b) and five specific exceptions thereto in subsection (c), only the last of which covers welfare funds. As the statute reads, it appears to be a criminal provision, malum prohibitum, which outlaws all payments, with stated exceptions between employer and representative."

To invoke the jurisdiction and powers of the District Courts of the United States under subsection (e) there must be a violation of subsection (b). If subsection (e) in itself conferred jurisdiction upon the Court it would be a delegation of broad equitable powers upon the Courts to regulate Union Welfare Funds which would result in the birth and establishment of a federal law for the administration of welfare trusts. This Congress did not intend. Subsection (e) was necessary to remove the bars of the Norris-LaGuardia and Clayton Acts, 29 U.S.C.A. § 101 et seq., 15 U.S.C.A. § 12 et seq., in enforcing violations of subsections (a) and (b) and was not included to establish broad jurisdiction for the District Courts (Moses v. Ammond, D.C.1958, 162 F.Supp. 866).

■ ■ I hold that Section 302(b) has not been violated as the Trust Fund Agreement is a separate entity; it is not an employer within the meaning of the act, and the defendant individually or as a representative of employees has not received, accepted, or agreed to receive, or agreed to accept, from an employer of such employees he represents, any money or thing of value. Without deciding the factual or legal questions other than those facts and law necessary for determining the jurisdiction of this Court, I hold that the Court does not have jurisdiction.

The Trust Fund Agreement defines Union as set forth in this opinion as Article I, 3 to be, one or more Local Unions chartered by the International Union that is a party to the agreement. Four of the trustees were representatives of the Proprietor and the other four trustees were representatives of the defined Union. The Trust Fund Agreement provides for the removal of the trustees for the Proprietor and the defined Union in Article IV, Section 4:

"Article IV: Administration of the Insurance Fund

"4. Designation: Successor Trustees.

\* \* \* \* \* \*

Any Trustee may be removed at any time by the Party for whom such Trustee has been designated, by mailing written notice of his removal to each of the remaining Trustees; \* \* \*."

It will be noted that the Four Union Trustees had been named by the president of the International Union at the inception of the Trust Agreement in the year 1954 but the defined Union accepted the appointment.

The Court lacking jurisdiction has no power to prevent the defendant, or the International Union from attempting to remove the Four Proprietor Trustees and/or the Four defined Union Trustees.

It is also noted that the International Union includes Proprietors among its members. The Trust Fund Agreement in Article I, quoted in this opinion, when referring to the class "Proprietors," not only includes such Proprietors who are members of the International Union but also non-members of the International Union.

There is no allegation or evidence as to the names of the defined Union and Proprietor parties to the Trust Fund Agreement. There are or have been such parties for the allegations and evidence disclose assets in excess of $300,000. There is no evidence of any collaboration between defendant and any employer to receive money or a thing of value as prohibited by the act nor do plaintiffs allege such. See Conditioned Air & Refrigeration Co. v. Plumbing & Pipe Fitting Labor-Management Relations Trust, D.C. 1956, 159 F.Supp. 887. Nor does the trust agreement permit such use of the funds by the defendant and his International Union. The Trust Fund Agreement bars the path to a violation of the Section 302(b).

This case falls within the orbit of the law of Trusts of the State of Indiana and an adequate remedy exists in the Courts of Indiana for the plaintiffs, as trustees of the Trust Fund entity, the party defined in the trust agreement as Local Unions, the Proprietor defined in the trust agreement, and the International Union. The basic question of Trusts in this case is whether or not the International Union can discharge the trustees or any of them under the terms of the trust agreement? I cannot find a violation of Section 302(b) of the said act. All that needs be done to do justice to the parties is to construe the trust agreement and enforce it.

■ The Welfare and Pension Plans Disclosure Act of 1958 (29 U.S.C.A. § 301 et seq.) confers no jurisdiction in the Federal Courts for the requested relief. The declared purpose of the act being that disclosure be made with respect to the operation and administration of such plans by requiring the disclosure and reporting to participants and beneficiaries

of financial and other information with respect thereto. None of the allegations or evidence of this case bring it within such act.

It is unnecessary to delve into the many other questions raised by the parties.

The plaintiffs' complaint, or proposed amended complaint, do not present any grounds for the jurisdiction of this Court nor do they disclose or indicate a future disclosure of any evidence which would enable this Court to have jurisdiction. The complaint is hereby dismissed for lack of jurisdiction.