**Louis WILKENS, Plaintiff,**

v.

**William C. DE KONING, Jr. and Local 138, International Union of Operating Engineers, Defendants.**

Civ. A. No. 17564.

United States District Court
E. D. New York.
June 7, 1957.

Butler, Bennett, Fitzpatrick & DeSio, New York City, by Bernard H. Fitzpatrick, New York City, of counsel, for plaintiff.

James G. Blake, Mineola, N. Y., by Harry H. Kutner, Mineola, N. Y., of counsel, for defendants.

BYERS, District Judge.

This is a motion for a temporary injunction pending the trial of an action in which the complaint was filed April 25, 1957.

The matter was heard on May 15, on the complaint and on affidavits, pro and con, and briefs were filed May 24.

The relief prayed for in the complaint is for "an order permanently restraining and enjoining the defendants and each of them from bringing plaintiff to trial (before the defendant union) upon the charge aforesaid (stated below) until the hearing and determination of this civil action and for such other and further relief, etc."

Since there is no answer, it is impossible now to know what final form the issues will assume.

A temporary stay was embodied in an order to show cause dated April 26, 1957, for an injunction pendente lite.

The complaint asserts jurisdiction under the Taft Hartley Act, Title 29 U.S.C.A. § 186(e). It will be seen that § 186(c) is also involved.

The allegations of the complaint may be thus summarized: That plaintiff is a member of the defendant union; that a Welfare Fund has been created by contributions of the members; that the trustees of the Fund have not made available the annual audits thereof for inspection by "interested persons."

That on April 23, 1956, plaintiff was given a copy of a report of said Fund said to have been made by accountants, which he exhibited to his attorney;

That this was deemed by the defendant De Koning to be a violation of the plaintiff's duty as a member of the union; and that the plaintiff was notified that he would be brought to trial on that charge on April 26, 1957, at a union meeting;

That plaintiff may be expelled from the union as the result of the trial, thus sustaining irreparable damage.

It is also alleged that the purpose of De Koning, the individual defendant named, and of the union, is to preclude plaintiff and other beneficiaries from inquiring into the finances of the Fund.

If this were all that is involved, the situation would be much simpler than it is. Section 186, subd. (c) of the Act which authorizes such a fund, contains provisions which need not be quoted, concerning the administration thereof and the handling of disputes arising in connection therewith; it specifies that the agreement "shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement."

It cannot be supposed that the statute intended to hedge such an audited statement with a veil of secrecy; clearly a person contributing through his membership in the union, to the Welfare Fund, is

an interested person, and clearly it would seem unnecessary for the statute to declare that such an interested person could consult his attorney concerning the audited statement with a view to being advised as to its legal sufficiency.

Subd. (e) of the same section creates jurisdiction on the part of the district courts of the United States "to restrain violations of this section," which is the reason why the plaintiff is in court.

Since that is the exercise of a legal right created by an act of Congress, it is difficult to see how it could be regarded as an offense against his union, and yet this is what the complaint alleges.

Seemingly this is a case of first impression so far as concerns these clauses in the two sections of the Act.

The situation is complicated however as appears from the affidavits above referred to, because the plaintiff has been made the subject of charges seemingly signed by nine members of the union, asserting that he has violated Article XXIII, Subdivision 7, Section (e) and Section (c) of Subdivision 3 of the same Article of the Union Constitution:

(1) In that the plaintiff with others "did wilfully and wrongfully create dissension among the members, destroy and attempt to destroy the interest and harmony of the local union and did bring the local union into disgrace by picketing the said local union and distributing leaflets containing false, etc., statements concerning Local 138."

(2) In that on or about "August 1954, at Coram, N. Y. and various other places, the said Louis Wilkens attended illegal meetings, * * * not convened pursuant to the by-laws * * * and discussed the internal affairs of Local 138 with persons at said meetings who were outside the organization, thus publicizing to outside persons the internal affairs of the union."

(3) This charge has to do with the plaintiff's conduct in connection with the report of the Welfare Fund heretofore discussed.

(4) In that "at a general meeting of Local 138, 138A, 138B, he did take the floor and did then state that he did not recognize the business manager * * *," and in that he refuses to make weekly reports to the business manager of the local.

(5) "That all of the above activities and others have been part and parcel of a common scheme among Louis Wilkens and a certain group within the local union which has as its sole purpose to annoy, harass and interfere with the local's duly elected officers in the administration of this union and has resulted in this local, its officers and members being subjected to public contempt, scorn and ridicule through the medium of press, radio and television for the past two years."

It will be seen that other than in the third charge, matters are comprehended touching the conduct of the plaintiff as a member of the union which ought to be heard and determined in the first instance according to the procedures established in the Constitution of the International Union, of which the defendant union is assumed to be a constituent member.

With such matters a court of law has no concern, until the remedies open to plaintiff within the union have been exhausted. Reigel v. Harrison, 6 Cir., 157 F.2d 140, certiorari denied, 329 U.S. 800, 67 S.Ct. 493, 91 L.Ed. 684; Durkin v. Murray, D.C., 90 F.Supp. 367.

It is stated by the plaintiff in his affidavit that "the remaining charges are interconnected with the Welfare Fund charge so that it will be impossible to separate the motivations and say that the whole is not a reprisal against me for my action concerning the Welfare Fund. For example, the 'Coram' charge, which is Charge 'Two' was tried against other defendants as long ago as the summer of 1955."

There may be plausibility in the foregoing allegation, and certainly it is significant that the Coram matter is alleged to have occurred prior by about two

years to the appointment of the plaintiff as a committee of one to examine the Welfare Fund report. It could be argued that if he was in sufficiently good standing to serve as a committee in April of 1956, the 1954 Coram incident could not then have been regarded as a blot upon his union status.

The cited provisions of the Constitution have been scrutinized in the consideration of this controversy. The language in which Article XXIII, Subdivision 7, Section (e) is couched is such as to cover nearly any action on the part of a member of the union which the presiding officer might choose to condemn, because if an individual member vocally objected to any ruling of the presiding officer he might thereby create "dissension among the members."

■ Even if all of the subdivisions relied upon are given a liberal construction, it seems to me that the plaintiff's conduct in examining the report of the Welfare Fund and consulting his counsel about it, was the exercise of a right created for him by act of Congress, and that it cannot be tortured into a violation of his duty as a member of a union; if that is true, he is sought to be held to answer a charge for which there is no basis in the fundamental law which governs his union membership.

If he should be convicted and expelled, and that action were to be confirmed by operation of the appellate process of the union, he could then appeal to the court for remedial action; it does not seem that he ought to be forced to go through so extended a process in order to present to the court an argument which it is convenient to consider at the very outset of this litigation. While the injunction I propose to grant is not to restrain "violations of this section (Sec. 186(c))," it is in furtherance of the statutory purpose, namely, to prevent union disciplinary action against a contributor to the Welfare Fund—"an interested person"— for exercising his legal right to discover whether a possible violation of the section exists.

In the event of judicial inquiry into the functioning of the disciplinary machinery of the union, it would be an appropriate element of the evidence to disclose to the court—so far as the plaintiff might be affected—such matters concerning minority rule in certain unions, as have been brought to the attention of the public, for instance, in the New York University Conference on Labor (1955). See "Union Democracy and Union Discipline," at page 443; "The Worker Speaks his Mind on Company and Union," (Purcell), Harvard University Press (1953); "Union Solidarity," Rose (1952), Chapter III; "The Union Member Speaks," Rosen (1955), page 80 et seq.

It results from these considerations that the application for an injunction pendente lite should be granted as to Charge (3) for the reasons which have been stated; that it should be denied as to the other charges which concern only questions of possible misconduct on the part of the plaintiff in his relationship to the union.

Settle order.