Alfredo MOSES, Irene Joseph, Blanche Black, on behalf of themselves and all other former members of Department and Varieties Stores Union, Local 1115A, R.C.I.A., a/k/a Warehouse Production and Sales Employees Union Local 1115A, R.C.I.A., similarly situated, Plaintiffs,

**v.**

Fred A. AMMOND, as Vice President of Retail Clerks International Association, AFL–CIO and Fred A. Ammond, as Trustee for Department and Varieties Stores Union, Local 1115A, R.C.I.A., a/k/a Warehouse Production and Sales Employees Union Local 1115A, R.C.I.A., Arthur Katz, as President of Warehouse Production and Sales Employees Union Local 1115A–Ind., Arthur Katz, Frank Gold and Charles Schimmel, as Trustees of Local 1115A, Health, Welfare and Service Fund, and Fred A. Ammond and William Maguire, purportedly acting as successor trustees of Local 1115A, Health Welfare and Service Fund, Defendants.

United States District Court
S. D. New York.

May 28, 1958.

I. Philip Sipser, New York City, for plaintiffs.

Vladeck & Elias, New York City, Judith V. Pomarlen, New York City, of counsel, for defendants Fred A. Ammond and William Maguire.

Rabinowitz & Boudin, New York City, for defendants Arthur Katz, Frank Gold and Charles Schimmel.

PALMIERI, District Judge.

Plaintiffs are former members of Department and Varieties Stores Union, Local 1115A, Retail Clerks International Association (Local 1115A). Defendants are (1) trustees and successor trustees of a Welfare Fund which was established by Local 1115A and the employers of the Local's members; (2) the President of the International Association; and (3) the trustee of Local 1115A.

The complaint alleges, upon information and belief, that "in or about March or April of 1957 * * * Local 1115A, disaffiliated from the International, whereupon the plaintiffs and others similarly situated, resigned their membership in Local 1115A." It appears from other papers on file in this case that an independent union was established at the time of the disaffiliation and that the International Association appointed a trustee for Local 1115A and that the trustee appointed himself and another as successor trustees for the Welfare Fund.

868

Article VI of the Declaration of Trust under which the Welfare Fund was administered is set forth in the complaint.[1] The complaint then alleges that, since the disaffiliation, the Welfare Fund has received no contributions "from the employers with whom said Local had collective bargaining agreements;" that there are not, presently, any employers who are required, under a collective bargaining agreement with Local 1115A, to contribute to the Welfare Fund;[2] and that the Fund should terminate and its proceeds be distributed to the plaintiffs and others similarly situated.

The complaint also alleges that a number of actions are pending in which each of the defendants seeks possession of the Welfare Fund. Plaintiffs allege that the defendants' claims are violative of Section 302 of the Labor Management Relations Act of 1947, 61 Stat. 157, 29 U.S. C.A. § 186. It is also alleged that, if defendants are successful in obtaining possession of the Welfare Fund, the plaintiffs will be denied benefits to which they are entitled under the terms of the Declaration of Trust. It appears, from other papers on file in this case, that the actions referred to above are pending in the New York State courts; that the actions seek to determine the rights to the Welfare Fund as between the officers of Local 1115A and the independent union; that the present plaintiffs are not parties to those actions; and that those actions do not seek distribution of the corpus of the Welfare Fund to the ex-members of Local 1115A.

The complaint seeks both declaratory and injunctive relief. The declaration of rights sought is that, "by reason of the occurrence of the conditions set forth in said Declaration of Trust," the trust has been terminated; that "under the terms of the Declaration of Trust" the plaintiffs are entitled to a pro rata distribution of the corpus; that the defendants have no right to the corpus of the trust; and that the defendants' retention of the corpus or obtaining the corpus, is prohibited by 29 U.S.C.A. § 186.

The injunction sought would restrain defendants from dealing with the assets of the Welfare Fund; restrain them from proceeding with any action to recover or retain possession of the Welfare Fund; and restrain them from interfering with plaintiffs' rights to "claim, use and enjoy" the corpus of the Welfare Fund. An accounting is also sought, as well as a direction that the Welfare Fund be distributed pro rata among plaintiffs and all others similarly situated.

Two of the defendants move for an order dismissing the complaint on the ground that this Court is without jurisdiction over the subject matter of the suit. Plaintiffs allege that this Court has jurisdiction under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 (1952 and Supp. V); and under Section 302 of the Labor Management Relations Act of 1947, 61 Stat. 157, 29 U.S.C.A. § 186.

■ The Declaratory Judgments Act, however, applies only to cases within the

---

1. "Article VI.
"1. Unless sooner terminated, the Trust shall remain in existence so long as the Union and any Employer have executed a collective bargaining agreement which provides for the payment of any sum of money by the Employer towards a health and welfare fund.
"2. Whenever all Employers are no longer required to make payment towards a health and welfare fund, the Trust shall come to an end and be liquidated by the Trustees in the manner following:
"(a) All group insurance policies shall be cancelled; and

"(b) All debts and obligations of the Trust shall be paid; and
"(c) All assets, property and funds remaining shall be transferred to the Union, which shall use the same for the benefit of its membership, in such manner as it, in its sole and absolute judgment, may deem proper."

2. The affidavit of plaintiff Moses, sworn to April 16, 1958, states that "there are no employers making any contributions of any kind whatever to the Local 1115A Health, Welfare and Service Fund." (Page 2.)

jurisdiction of the courts of the United States, 28 U.S.C. § 2201 (Supp. V). It "did not extend their jurisdiction." Skelly Oil Co v. Phillips Petroleum Co., 1950, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194. Accordingly, I turn to a consideration of whether such jurisdiction is otherwise conferred upon this Court.

### I

### Jurisdiction Under 29 U.S.C.A. § 186.

Plaintiffs rely upon subsection (e) of 29 U.S.C.A. § 186,[3] and cite five federal cases for the proposition that that subsection vests the federal courts with broad equity jurisdiction over welfare funds established in industries affecting interstate commerce. Copra v. Suro, 1 Cir., 1956, 236 F.2d 107; Hobbs v. Lewis, D.C.D.C.1958, 159 F.Supp. 282; Wilkens v. De Koning, D.C.E.D.N.Y. 1957, 152 F.Supp. 306; Conditioned Air and Refrigeration Co. v. Plumbing and Pipe Fitting Labor-Management Relations Trust, D.C.S.D.Cal.1956, 159 F. Supp. 887; and American Bakeries Co. v. Barrick, D.C.N.D.Ohio 1958, 162 F. Supp. 882. With the exception of the Copra case, however, it appears that the jurisdictional issue was not raised in any of these cases, or that the relief sought was that particularly provided in 29 U.S. C.A. § 186(e), i. e., an injunction to restrain the defendants from accepting

payments alleged to be in violation of 29 U.S.C.A. § 186(a) and (b).[4] Part III of this opinion contains a discussion of whether this suit presents a problem "arising under" these subsections. The same reasoning which leads to a negative answer to that question leads to the conclusion that the relief sought here is not that provided for in subsection (e), and that, therefore, that subsection is of no avail to plaintiffs here even if it does confer jurisdiction on this Court.

Copra v. Suro, supra,[5] is, not surprisingly, cited by both plaintiffs and defendants in support of their respective positions. For the Court, in Copra, stated that "[t]he legislative history suggests to some extent * * * that Congress intended in [29 U.S.C.A. § 186(e)] to create a broad equity jurisdiction that * * * would also authorize [the District Courts] to exercise a more general equity power over the welfare funds * * *" 1 Cir., 1956, 236 F.2d 107, 115. But the holding, in Copra, was that the District Court did not err in denying plaintiffs' motion for an interlocutory injunction. The Court came to this conclusion because it felt that the District Court had not erred in finding that there were "serious doubts" as to its jurisdiction under 29 U.S.C.A. § 186(e). Id. at *loc. cit.*[6]

I do not believe that 29 U.S.C.A. § 186 (e), in itself, vests any jurisdiction in

3. That subsection reads as follows:
   "(e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–110 and 113–115 of this title."

4. These subsections read as follows:
   "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

   "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

5. The Copra decision lists a number of earlier decisions, in addition to those cited by plaintiffs here, in which the jurisdictional issue was not considered or in which only the relief provided in 29 U.S.C.A. § 186(e) was granted. 1 Cir., 1956, 236 F.2d 107, 115.

6. The Court also found that the denial of the preliminary injunction was not improper because there was pending in the District Court, in addition to the Copra suit, another action in which the relief

the District Courts. Such an interpretation would be possible if the subsection, quoted in footnote 3, supra, ended after the words "restrain violations of this section." But the subsection as a whole indicates, I believe, that its purpose was to remove the bar of sections 6 and 20 of the Clayton Act, 38 Stat. 731, 738 (1914), 15 U.S.C.A. § 17, 29 U.S.C.A. § 52, and the bar of the Norris-La Guardia Act, 47 Stat. 70 (1932), as amended, 29 U.S.C.A. §§ 101–110, 113–115, so as to permit the courts of the United States, in cases in which jurisdiction was otherwise present, to enjoin violations of subsections (a) and (b) of 29 U.S.C.A. § 186. This conclusion is buttressed by a comparison of the language of this subsection with the language Congress employed in Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a).[7] That subsection provides jurisdiction in the federal courts for "[s]uits for violation of [labor-management] contracts." Interpreting that broad language, the Su-

preme Court has held that Congress had power to regulate labor-management controversies, that § 185(a) directed the federal courts to fashion federal law to regulate those controversies, and that jurisdiction to decide these controversies was present because they would "arise under" the federal law which the federal courts were to fashion. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 456–457, 77 S.Ct. 912, 1 L.Ed.2d 972. I find, from the language of § 186(e), no Congressional mandate to the federal courts to fashion federal law for the administration of union welfare trusts. In my opinion, that subsection does no more than clear the way for permitting federal courts to enjoin violations of § 186(a) and (b).[8]

My interpretation of 29 U.S.C.A. § 186 (e) is further buttressed by the legislative history of the Act,[9] and by a dictum in a recent decision of the Court of Appeals for this Circuit.[10]

---

sought was that provided in 29 U.S.C.A. § 186(e); and because a decision in that case would resolve the issues presented in Copra, in which relief beyond that explicitly provided in § 186(e) was requested. Copra v. Suro, 1 Cir., 1956, 236 F.2d 107, 112, 115–117.

7. That subsection reads as follows:
"(a) Venue, amount, and citizenship.
"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
The sweep of this language also throws doubt on the possibility that § 186(e) could be construed as a jurisdictional grant, even if it ended with the words "restrain violations of this section."

8. See the opinion of Mr. Justice Frankfurter in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 452–459, 75 S.Ct. 488, 99 L.Ed. 510.

I may add that there is no contention here that 29 U.S.C.A. § 185(a) vests jurisdiction in this Court. See Copra v. Suro, 1 Cir., 1956, 236 F.2d 107, 113.

9. "Subsection (e) gives the district courts jurisdiction to restrain and to punish violations of the section, notwithstanding the provisions of the Norris-LaGuardia Act." 93 Cong.Rec. 4678 (1947) (Sen. Ball).
"Is not [29 U.S.C.A. § 186(e)] an invitation to resort to the courts in labor disputes? Does it not again open the courts, which have been denied the right to issue injunctions, to labor disputes?" Id. at 4680 (Sen. Thomas).
"Reference has been made to a provision in the amendment which puts the matter back in court to enjoin a violation of the statute. We are step by step whittling away the Norris-LaGuardia Act; step by step we are restoring government by injunction * *." Id. at 4680 (Sen. Pepper).

10. In 29 U.S.C.A. § 186(e) "Congress expressly lifted the bar of the Norris-LaGuardia Act to vest certain injunction powers in the courts * * *." A. H. Bull S.S. Co. v. Seafarers' International Union, etc., 2 Cir., 1957, 250 F.2d 326,

Nor does my reading of the statute render it without meaning or purpose. Jurisdiction to restrain violations of 29 U.S.C.A. § 186(a) and (b) arises from 28 U.S.C. § 1337 (1952).[11] The provisions of 29 U.S.C.A. § 186(e) are necessary, however, to remove the bars of the Norris-LaGuardia and Clayton Acts. Conversely, a proper understanding of the jurisdictional basis for action by the federal courts is not merely a hollow exercise in dialectics. For, when the limited function of 29 U.S.C.A. § 186(e) is understood, and resolution of the jurisdictional problem is focused on 28 U.S. C. § 1337 (1952), it becomes clear that the question is not one of any "general equity" power in the Court, but whether the case is an "action or proceeding arising under any Act of Congress regulating commerce." 28 U.S.C. § 1337 (1952). Ultimately, therefore, and since I hold that 29 U.S.C.A. § 186(e) does not direct the federal courts to fashion a federal law for the administration of union welfare funds, jurisdiction of this Court over this suit depends on whether it raises a question arising under 29 U.S.C.A. § 186(a) or (b).

## II

### Jurisdiction Under 28 U.S.C. § 1337 (1952).[12]

Plaintiffs allege that the "Welfare Fund was established in compliance with the provisions of" 29 U.S.C.A. § 186(c) (5).[13] But, just as it is a mis-

330, certiorari denied, 1958, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414. See note 16, infra.

11. This section reads as follows:
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
See discussion infra, Part III of this Opinion.
Jurisdiction, in a proper case, would also lie under 29 U.S.C.A. § 185(a). See note 8, supra.

12. While the complaint does not allege jurisdiction under 28 U.S.C. § 1337 (1952), such jurisdiction is asserted in plaintiffs' brief.

13. Subsection (c) removes various payments to employee representatives from the ban of subsections (a) and (b), quoted in note 4, supra. Paragraph (c) (5) exempts:
" * * * money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided*, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein, cannot be used for any purpose other than paying such pensions or annuities."

take to think that subsection (e) directs the federal courts to fashion a federal law of trusts to govern the administration of union welfare funds, it is a mistake to think that § 186 established such a law.[14]

While paragraph (c) (5) is, physically, the lengthiest portion of § 186, it is, grammatically, only an exception from the prohibitions of subsections (a) and (b). The purpose of § 186 was considered by the Supreme Court in United States v. Ryan, 1956, 350 U.S. 299, 305, 76 S.Ct. 400, 404, 100 L.Ed. 335:

> "Nor can it be contended that in this legislation Congress was aiming solely at the welfare fund problem. Such a suggestion is supported neither by the legislative history nor the structure of the section. The arrangement of § 302 is such that the only reference to welfare funds is contained in § 302(c) (5). If Congress intended to deal with that problem alone, it could have done so directly, without writing a broad prohibition in subsections (a) and (b) and five specific exceptions thereto in subsection (c), only the last of which covers welfare funds. As the statute reads, it appears to be a criminal provision, *malum prohibitum*, which outlaws all payments, with stated exceptions, between employer and representative." [15]

Thus, it may be seen that the extent of the federal law established by § 186 is that certain payments to employee representatives, *i. e.*, all payments not excepted by subsection (c), are prohibited. Accordingly, 28 U.S.C. § 1337 (1952) vests jurisdiction in the federal courts over any suit in which it "is essential to plaintiff's success" that a payment to an employee representative be deemed forbidden by § 186. See the Opinion of Mr. Justice Frankfurter in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 450, 75 S.Ct. 489, 99 L.Ed. 510. Thus, in such a suit, § 186(e) permits the federal courts to enjoin such a payment;[16] and, for instance, a suit for recovery of payments alleged to be illegal under § 186 would lie in the federal courts.[17]

### III

### Does this Case Present a Question "Arising Under" 29 U.S.C.A. § 186(a) or (b)?

■ While the exegesis has been (necessarily, I think) somewhat long, the

---

14. Of course, § 186's outlawing of payments to employee representatives, unless such payments are excepted by subsection (c), does, undoubtedly, have, as a practical matter, an effect on the provisions written into welfare fund trust agreements. The same may be said, of course, of any number of federal laws, including the tax laws, see Ziskind, The Law of Employee Benefit Plans, 1955 Wash.U.L.Q. 112. But the fact that the trust is established in such a way as to exempt it from the prohibitions of § 186(a) and (b) no more makes all questions concerning the administration of such trusts, federal questions, than would the fact that the trust is established in such a way as to take advantage of the federal tax laws.

15. I do not understand the statement in Ryan that § 186 is a "criminal" provision to mean that it is only that. The Ryan case involved a prosecution under § 186 (b).

16. It has been suggested that the injunction may issue only upon request of the National Labor Relations Board. The dictum in A. H. Bull S.S. Co. v. Seafarers' International Union, etc., 2 Cir., 1957, 250 F.2d 326, 330, certiorari denied 1958, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414, partially quoted in note 10, supra, reads, more completely as follows: In § 186(e) "Congress expressly lifted the bar of the Norris-LaGuardia Act to vest certain injunction powers in the courts when the National Labor Relations Board initiated the court proceedings."

17. Cf. the Opinion of Mr. Justice Frankfurter in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 443, note 2, 75 S.Ct. 489, 99 L.Ed. 510 and text thereat.

question dispositive of this case may now be put and, I believe, rather readily answered. The question is: Do the plaintiffs here seek relief, their entitlement to which depends on a finding that payments have been received by the trustees of the Welfare Fund,[18] or made by the employers, in violation of § 186(a) or (b)? The answer must be in the negative.

The complaint nowhere alleges that payments have been made by an employer to his employees' representatives in violation of § 186. Indeed, as set forth supra at page 871 of 162 F.Supp. the complaint alleges that the trust was established in conformity with § 186(c) (5), in which case the payments made would have been excepted from the ban of § 186(a) or (b). Nor is there any allegation that there is presently existing any agreement to make payments which could be enjoined as violative of § 186(a) or (b). In fact, as set forth supra at page 868 of 162 F.Supp., the complaint alleges that there are no employers who are presently required to contribute to the Welfare Fund.

To the extent that the complaint seeks a declaration of plaintiffs' rights to have the fund distributed to them, and a mandatory injunction seeking such distribution, no issue under § 186 is raised. The complaint seeks such relief because the trust "has been terminated by reason of the occurrence of the conditions set forth in said Declaration of Trust for its termination;" and because plaintiffs "are entitled under the terms of the Declaration of Trust to have the trust corpus distributed to them pro rata."[19] Whether distribution of the trust corpus to these plaintiffs is required, presents a question calling for the interpretation of the trust agreement and, perhaps, the applicable state law of trusts. No issue is presented, in so far as distribution to these plaintiffs is concerned, calling for an interpretation of § 186, and this Court is, therefore, without jurisdiction to declare or mandate such relief.

■ Much of the same can be said concerning the prayer for a declaration that defendants have no right to the corpus of the fund and for an injunction restraining them from prosecuting the State court actions. I repeat that there is no allegation that the payments made to the Welfare Fund were illegal; and that the complaint affirmatively indicates to the contrary. Again, the complaint also alleges that there are no further payments to be made to the Welfare Fund.

■ The complaint does allege that the defendants' claims in the pending State court actions are "violative" of § 186. But the face of the complaint also shows that there is no merit to this contention. The entire sweep of § 186 is to prohibit certain payments which, the allegations of the complaint show, were not prohibited here.[20] Whether the officers of the independent union or the trustee of Local 1115A are now entitled

18. For the purposes of this motion, I assume that the trustees are "representatives" within the meaning of the statute. See Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor-Management Relations Trust, D.C.S.D.Cal.1956, 159 F.Supp. 887, 899.

19. See also, the affidavit of the plaintiff Moses, sworn to on April 16, 1958, page 1: "At the outset deponent wishes to reassert the underlying fact upon which this entire action is predicated, to wit: that the conditions upon which the trust is to terminate have occurred."

20. The following statement is made in plaintiff Moses' affidavit, supra, note 19, at page 4: "Finally [§ 186] specifically prohibits the Union from becoming the possessor of this kind of fund." Section 186, however, goes no further than prohibiting an employer from making, or agreeing to make, certain payments to his employees' representatives and prohibiting those representatives from accepting, or agreeing to accept, such payments. Plaintiffs, in effect, are asserting that payments, or an agreement, not prohibited by § 186 when made, would be prohibited if now made. I repeat that § 186(c) (5) does not contain a mandate as to the manner in which union welfare funds are to be administered, or terminated, but only an exception from § 186(a) and (b)'s prohibition against certain payments and agreements.

to the corpus of the trust fund is a question of interpretation of the trust agreement (a question of state law) and, perhaps, of the applicable state law of trusts. Section 186 offers no guidance to the solution of this problem. Since the rights of the various defendants to the corpus also do not "arise under" § 186, this Court is also without jurisdiction to grant the relief sought on this branch of the complaint. For this Court to interfere with the orderly disposition of that issue in the State courts would, in any event, be "uneconomical as well as vexatious," Brillhart v. Excess Ins. Co. of America, 1942, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620; see also National Cancer Hospital of America v. Webster, 2 Cir., 1958, 251 F.2d 466; and I would be inclined, as a matter of discretion, to deny this relief even if the Court had jurisdiction under the diversity statute.

In sum, since no violations of § 186(a) or (b) are involved, there is no basis for invoking the powers of the United States courts. Those powers rest squarely upon the presence of such violations. To read into this statute, as plaintiffs urge, a broad bestowal of jurisdiction over all disputes relating to union welfare funds is not consonant with the architecture of the law or with its purpose.[21]

■ Although the motion for dismissal has been made by only two of the defendants, the complaint will be dismissed as against all. Fed.R.Civ.P. 12(h)(2), 28 U.S.C.; Hacknar v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95, 97, certiorari denied 1941, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520.

It is so ordered.

21. See United States v. Ryan, 1956, 350 U.S. 299, 305, 76 S.Ct. 400, 100 L.Ed. 335, quoted supra, 162 F.Supp. at page 872; United States v. Brennan, D.C. D.Minn.1955, 134 F.Supp. 42, 47, judgment of conviction entered D.C.D.Minn. 1956, 137 F.Supp. 888, affirmed 8 Cir., 240 F.2d 253, certiorari denied 1957,

353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723: "An apparent purpose of Section 186(a), (b) and (d) * * * is to preserve the integrity of the labor-management relationship by prohibiting bribery, extortion or any form of dishonesty as between employer and employees."