John BOWERS, etc., et al., Plaintiffs, Appellants,

v.

ULPIANO CASAL, INC., et al., Defendants, Appellees.

No. 7048.

United States Court of Appeals First Circuit.

April 22, 1968.

Seymour M. Waldman, New York City, with whom Louis Waldman, New York City, C. A. Romero Barcelo, San Juan, P. R., Martin Markson, New York City, Segurola & Romero, San Juan, P. R., and Waldman & Waldman, New York City, were on brief, for appellants.

Alberto Pico, San Juan, P. R., with whom Pico & Rosa Silva, San Juan, P. R., was on brief, for Ulpiano Casal, Inc., et al., appellees.

William Estrella, San Juan, P. R., with whom Beverley, Rodriguez, Estrella & Pesquera, San Juan, P. R., was on brief, for Berens Mortgage Bankers, Inc., appellee.

Federico Ramirez Ros, Santurce, P. R., with whom Ramirez, Segal & Latimer, Santurce, P. R., was on brief, for U. S. Industries of Puerto Rico, Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a dismissal by the district court of Puerto Rico of a complaint, brought by trustees of the ILA-PRSSA Welfare Fund (Fund) [1] for the benefit of employees, as to six of twenty-four defendants. All defendants were alleged to have participated in the wrongful diversion of monies from the Fund. The principal question before us is whether a federal court has jurisdiction, under either section 301 or 302 of the Labor Management Relations Act, 1947 (29 U.S.C. §§ 185, 186), of that part of the complaint alleging that these six appellees, not parties to the trust fund agreement, received monies or security from the Fund, with knowledge that such transactions were illegal, imprudent, or in breach of fiduciary obligations.

The complaint alleges that some present and former trustees of the Fund, former attorneys of the Fund and of Local 1575, and a subsidiary, the ILA-

1. A welfare fund, created as the result of collective bargaining between Local 1575 of the International Longshoremen's Association, AFL-CIO, and the Puerto Rico Steam Ship Association, pursuant to the Labor Management Relations Act, 1947 (29 U.S.C. § 141 et seq.).

PRSSA Welfare Fund Housing Project (Housing Project) illegally, imprudently, and in violation of fiduciary duties, together with a speculative housing project builder, La Providencia Development Corporation, and the six corporate defendant-appellees performed certain acts prejudicial to the rights of the beneficiaries of the Welfare Fund. The acts alleged included the improper conveyance of land acquired with Fund monies to the Housing Project, an imprudent development contract with La Providencia, the unjustified use of Fund monies to discharge La Providencia's obligations, the execution by the Housing Project of an unauthorized mortgage to appellee Berens Mortgage Bankers, Inc., and the receipt, with knowledge of illegality and breach of trust, of Fund monies in payment of La Providencia's obligations by the five other appellees.

Plaintiffs-appellants seek injunctions against selling any property of the Fund or Housing Project; an accounting from the individual defendants; reconveyance of land to the Fund from the Housing Project; injunctions against lawsuits based on any agreement, note or mortgage; cancellation of the mortgage given appellee Berens; and an accounting and repayment of monies received by the other appellees. Only the last three prayers apply to the appellees before us.

The district court dismissed the complaint as to appellee Berens for failure to state a cause of action, and denied leave to amend the complaint. It dismissed the complaint as to the other appellees for lack of federal jurisdiction. We need look no farther than the jurisdictional problem to affirm both actions of the district court.

■ First of all, it is clear that jurisdiction cannot rest on section 301(a) of the Act (29 U.S.C. § 185(a)), which allows "Suits for violation of contracts between an employer and a labor organiza-

tion" to be brought in a federal district court. Even though the agreement creating the Fund is such a contract, resulting from collective bargaining, see Thomas v. Reading Anthracite Co., 264 F.Supp. 339 (M.D.Pa.1966), no one of the appellees was a party to such contract. Appellants contend that as long as the contract is between an employer and a labor organization, "any party who claims rights thereunder may sue for breach", citing Smith v. Evening News Ass'n., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In *Smith,* the Court allowed individual employees to sue employers under section 301, reasoning that restricting section 301 to "labor organizations" would stultify congressional policy in that employee claims are "to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based." *Smith,* supra at 200, 83 S.Ct. at 270.

It is difficult to see how such a rationale could justify allowing third parties who are not employers, unions, or employees to bring suit under this section. Even if *Smith* were to be so extended, however, the complaint against these appellees does not and could not allege that they have violated a contract. While appellees allegedly knowingly shared in the fruits of malfeasance and possible breach of contract on the part of the Fund's trustees, they themselves can no more be successfully sued "for violation of contract" than one who buys a house from a seller, knowing that the seller has broken his exclusive agency agreement with a broker.

Of more appeal, assuming the truth of the allegations, is the contention that federal power to assist in protecting such a welfare fund exists under section 302 (e) (29 U.S.C. § 186(e)).[2] Some dis-

---

2. The statutory scheme of section 302 first prohibits and constitutes as a criminal offense the request, acceptance, or making of gifts to representatives of employees.

Then several exemptions are noted, the fifth of which is contributions to a welfare fund which meets certain specifications centering around joint administra-

trict courts have seen in this section a foundation on which to rest rather broad powers of policing welfare trust administration.[3] Indeed we may have contributed to this scattering of cases by our speculation in Copra v. Suro, 236 F.2d 107, 114–116 (1st Cir. 1956) that there may be a basis for asserting a broad federal equity jurisdiction.

We are, however, persuaded that the weight of reason and authority compels a narrow reading of section 302(e). In the first place, its language limits federal courts "to restrain violations of this section". These violations, if we read correctly, are violations of basic structure, as determined by the Congress,

not violations of fiduciary obligations or standards of prudence in the administration of the trust fund.[4] It is this kind of violation, to which the Court made reference in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 205, 82 S.Ct. 1328, 8 L.Ed. 2d 440 (1962) (dictum) as being enjoinable "in order to protect the integrity of the employees' collective bargaining representatives". This very "conduct so enjoinable" is also made a crime by section 302. Sinclair, supra at 205 n. 19, 82 S.Ct. 1328 (dictum). We see no room for enjoinable violations which are not at the same time section 302 crimes.[5]

That this is the correct reading is corroborated by the extensive legisla-

---

tion by labor and management. The section concludes with subsection (e):

"The district courts of the United States * * * shall have jurisdiction, * * * to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–115 of this title." 29 U.S.C. § 186(e).

3. In Employing Plasterers' Ass'n of Chicago v. Journeymen Plasterers' Protective and Benev. Soc., 177 F.Supp. 688, 696 (E.D.Ill.1959) (dictum), the court, although denying injunctive relief, cited language in the legislative history of the Labor Management Relations Act to the effect that employees would be able to go to court and enforce their rights in a fund, and said that in a proper case employees—not employers—could, under section (e), challenge the administration of a fund. The Seventh Circuit reversed the district court's order dismissing the action, 279 F.2d 92 (7th Cir. 1960).

The court in In re Bricklayers' Local No. 1 of Pa. Welfare Fund, 159 F.Supp. 37 (E.D.Pa.1958) took jurisdiction under section (e) of a request by fund trustees to invest in certain real estate on the theory that its refusal to grant permission would be equivalent to an injunction. American Bakeries Co. v. Barrick, 162 F.Supp. 882 (N.D.Ohio 1958), aff'd 285 F.2d 426 (6th Cir. 1960), while proclaiming that a trust fund was not the "ward of the court", seemed to recognize that an injunction could issue if special provisions of an agreement were violated. And in Upholsterers' Int'l Union of North America v. Leathercraft Furniture Co., 82 F.Supp.

570, 575 (E.D.Pa.1949), the court indicated that, if trustees pursued a wrong purpose, improper expenditures could be enjoined. See also Note, The Taft-Hartley Welfare and Pension Trust—An Emerging Legal Entity, 35 N.Y.U.L.Rev. 1181 (1960).

4. Such structural violations would consist of contributions to a trust fund which was not established for the sole and exclusive benefit of employees and dependents; which did not hold payments in trust to pay, from principal or income, for such employees' medical care, pensions, illness, etc.; which did not set forth in writing the detailed basis of payments; which did not have equal representation of employees and employers with provision for a neutral person or umpire; which did not contain provisions for an annual audit; or which did not have a separate trust for pension and annuity funds.

5. The Court's reference in Arroyo v. United States, 359 U.S. 419, 426–427, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959) to making "[c]ontinuing compliance with these [statutory] standards in the administration of welfare funds * * * explicitly enforceable * * * under § 302 (e)" is consistent with this emphasis on maintaining the integrity of the fund structure. We do not draw from Arroyo, as apparently the court did in Lewis v. Mill Ridge Coals, Inc., 298 F.2d 552, 558 (6th Cir. 1962) (which antedated Sinclair, supra), the authority for saying that section 302(e) permits the use "of whatever equitable remedies may be needed to command obedience, by the trustees, to their contractual and statutory obligations."

tive history of section 302. As the Court noted in United States v. Ryan, 350 U.S. 299, 304–306, 76 S.Ct. 400, 100 L.Ed. 335 (1956), two successive Congresses had been concerned with the twin possibilities of corrupting union representatives and extorting tribute from employers. The dominant objective of the legislation was to eliminate the influence of side payments. As part, but only a part of this statutory scheme, the sole control of trust funds by union officials was proscribed.

It is true that in the general debates in Congress, as the district court in *Employing Plasterers' Ass'n of Chicago*, supra, n. 3, noted, that there are some statements in which the spokesmen envisaged employees going to court and enforcing their rights to benefits. These statements, however, were often in the context of enforcing the statutory structure rather than efficient and honest administration.[6] To the extent that such statements argue for a broader interpretation of section 302(e) than that required to deal with the specific evil sought to be combatted, we would share Judge Learned Hand's skepticism of the significance of such remarks in general debate, United States v. Ryan, 225 F.2d 417, 427 (2d Cir. 1955) (dissenting opinion), rev'd 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). We would also observe that when the Congress wants to establish the basis for comprehensive jurisdiction, it knows how to do so.[7]

It is quite clear that Congress, in enacting section 302(e), was dealing with a very specific problem. Having set up a basic structure for welfare trust funds, and having imposed criminal sanctions for employer contributions other than to such funds, it also sought to provide a preventive civil remedy to enforce compliance with the statutory standards. But, were injunctive relief to be available for such purpose against a labor organization, the anti-injunction provisions of the Clayton and Norris-La Guardia Acts must be made non-applicable.

Congress accomplished this purpose through section 302(e). The final version of 302(e) closely resembled other federal labor provisions which had been designed to remove the injunction bar. See 72 Harv.L.Rev. 778, 780 (1959); cf. A. H. Bull S. S. Co. v. Seafarer's Intern. Union, 250 F.2d 326, 330 (2d Cir. 1957) (dictum), cert. denied, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958). Significantly, the original House version of 302(e) lifted the injunction bar as to "actions and proceedings involving violations of agreements between an employer and a labor organization" whereas the final version reported out of the conference committee removed the bar

6. For example, Senator Pepper is sometimes quoted as reading from a committee report that:

   " * * * It does not prohibit welfare funds but merely requires that, if agreed upon, such funds be jointly administered—be, in fact, trust funds for the employees, with definite benefits specified, to which employees are clearly entitled and to obtain which they have a clear legal remedy. The amendment proceeds on the theory that union leaders should not be permitted, without reference to the employees, to divert funds paid by the company, in consideration of the services of employees, to the union treasury or the union officers, except under the process of strict accountability." 93 Cong.Rec. 4805 (1947), reprinted in 2 Legislative History of the Labor Management Relations Act, 1947, 1305 (1948) (hereinafter referred to as Legislative History).

   The sentence which follows this excerpt reads:

   "Thus the amendment makes extortion illegal and also prevents the check-off of union dues unless authorized in writing by the individual employee." 93 Cong.Rec., supra, 2 Legislative History, supra.

7. That, twelve years after the enactment of section 302, the Congress was still interested in the dominant if not sole purpose of building a structural framework to eliminate the corruptive influence of side payments is made clear by its 1959 amendments affecting this section, all of which were directed at eliminating the management middleman. See U.S.Code Cong. & Ad.News, 86th Cong., 1st Sess., vol. 2, p. 2326.

only as to actions "to restrain violations of this section." House Conference Report No. 510, 80th Cong., 1st Sess., on H.R. 3020 (June 3, 1947), 1 Legislative History 570 (1948), U.S.Code Cong.Serv. 1947, p. 1135. See also Moses v. Ammond, 162 F.Supp. 866, 869 (S.D.N.Y. 1958).

■ While we recognize that it is appropriate in some areas of labor-management relations to develop principles of federal common law, we do not think that the case at bar presents a fitting opportunity. Were we to say that section 302 (e) conferred federal jurisdiction on the causes of action described in the complaint, we would make a series of giant strides. We would first have to say that 302(e) enabled suit to be brought against third party defendants who are not unions, employers, or trustees. We would then have to say that even though it is not alleged that the Fund fails to comply with standards of section 302(c) (5), contrary to its wording, can reach something more than a violation of the section. Finally, we would have to say that while subsection (e) speaks in terms of restraining action, it can compel the cancellation of a mortgage and the repayment of liquidated sums. Were we to take these leaps, not only would we be painting with an extremely broad brush, but we would impliedly be saying that only federal courts can properly police the administration of trusts.

■ We therefore share what we deem to be the current majority position that section 302(e) is not the foundation stone for federal court management of trust funds. Cf. Blassie v. Kroger Co., 345 F.2d 58 (8th Cir. 1965); cf. Lewis v. Hogwood, 112 U.S.App.D.C. 105, 300 F.2d 697 (1962); Employing Plasterers' Ass'n of Chicago, supra; Moyer v. Kirkpatrick, 265 F.Supp. 348 (E.D.Pa.1967); Holton v. McFarland, 215 F.Supp. 372 (D.Alas.1963); Kane v. Shulton, Inc., 189 F.Supp. 882 (D.N.J.1960); Sanders v. Birthright, 172 F.Supp. 895 (S.D.Ind. 1959); Moses v. Ammond, supra. See also 72 Harv.L.Rev., supra at 778 and Note, Protection of Beneficiaries Under Employee Benefit Plans, 58 Colum.L.Rev. 78, 111 (1966).

Affirmed.