Joseph **FIORELLI** et al.

v.

George **KELEWER** et al.

Civ. A. No. 71–785.

United States District Court,
E. D. Pennsylvania.

Feb. 9, 1972.

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

Martin J. Resnick, Zarwin, Baum, Aranzio & Somerson, Philadelphia, Pa., for plaintiffs.

Joseph B. Meranze, Meranze, Katz, Spear & Bielitsky, and George Gurdon Fay, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the Court is the defendants' motion to dismiss the complaint pursuant to F.R.Civ.P. 12(b) on the grounds, among others, that this Court lacks jurisdiction over the subject matter and the complaint fails to state a claim upon which relief can be granted.

As set forth in the complaint, plaintiffs, collectively, constitute the trustees of Drywall Finishers Local No. 1955 Pension Fund (hereinafter, "plaintiffs") and sue in their official capacity. The defendants, collectively, constitute the trustees of the District Council # 21 Painters Pension Plan of Philadelphia, Brotherhood of Painters, Decorators, and Paperhangers of America (hereinafter, "defendants"). The present litigation concerns the allocation of funds between both trusts.

The District Council # 21 Painters Pension Plan (hereinafter, "District Council Trust") was created on December 29, 1961 pursuant to a collective bargaining agreement entered into between District Council # 21 and duly authorized representatives of Associated Master Painters and Decorators of Philadelphia, Inc. and other employers in the painting, paperhanging, and decorating industry. The trust agreement was made retroactive to May 1, 1960.

On July 27, 1967, approximately five and one half years later, ninety-nine members of the various local unions comprising District Council # 21 withdrew from their locals and transferred their membership to Drywall Finishers, Local No. 1955 (hereinafter "Local # 1955") which was created pursuant to a charter issued by the Brotherhood of Painters, Decorators, and Paperhangers of America. Eighteen months later, on January 20, 1969, pursuant to a collective bargaining agreement between Local # 1955 and duly authorized individuals acting on behalf of the Gypsum Drywall Contractors Association and others, the Drywall Finishers Local No. 1955 Pension Fund (hereinafter Local # 1955 Trust") was created. Much like the District Council # 21 Trust after which it was patterned, the newly formed trust was to take effect retroactively—in this case from May 1, 1968.

During the eighteen month interval between the withdrawal of the membership of Local # 1955 and the creation of the Local # 1955 Trust, employers of the ninety-nine employees continued to make pension contributions. For the nine month interval from Local # 1955's withdrawal until the retroactive effective date of its trust, employers continued to make regular contributions to the District Council # 21 Trust pursuant to the original collective bargaining agreement. Thereafter to the present, employers of the ninety-nine have made their contributions to the Local # 1955 Trust.

A considerable period of time having lapsed since the foregoing transpired, plaintiffs instituted the present suit on March 31, 1971 to compel the defendant-trustees to relinquish that portion of District Council Trust's reserves attributable to contributions from employers of Local # 1955's membership. Plaintiffs assert a cause of action arising under sections 301 and 302 of the Taft-Hartley Act (29 U.S.C. §§ 185 and 186) and section 401(a) (7) of the Internal Revenue Code of 1954, 26 U.S.C. § 401 (a) (7). Their claims will be considered in that order.

## SUBJECT MATTER JURISDICTION

■■ Inasmuch as a direct violation of a federal statute has been pleaded and

since the claim, with the exception of that portion asserted to arise under section 401(a) (7) of the Internal Revenue Code of 1954, does not appear immaterial to the law pleaded or "wholly insubstantial and frivolous", this Court has jurisdiction over the subject matter of the present litigation. Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The Court shall, therefore, proceed to consider the question of whether the complaint fails to state a claim upon which relief can be granted.

## CLAIM UPON WHICH RELIEF CAN BE GRANTED

Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, provides in pertinent part that:

"(a) Suits for violation of *contracts* between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (emphasis added).

In their Complaint, plaintiffs simply assert that their cause of action "is brought under the provisions of Section 301 of the Act." From the facts as stated, defendants contend that plaintiffs have failed to state a cause of action within the purview of this section. The Court agrees. Necessary to the applicability of section 301 is the violation of a contract between an employer and a labor organization or between two or more labor organizations. Aside from the question of whether plaintiffs are parties properly cognizable under section 301, they have alleged neither the existence and breach of any collective bargaining agreement between an employer and a labor organization nor the breach of any contract between two labor organizations. In support of their position plaintiffs site Raymond v. Hoff-

mann, 284 F.Supp. 596 (E.D.Pa.1966). There the court recognized a cause of action based upon the alleged breach of an oral contract between two labor unions. In the present case no such contract and its violation has been alleged.

Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186, is more pertinent to the present controversy. In substance, § 302(a) makes it unlawful for an employer in an industry affecting commerce to make any payment to any "representative" of its employees or to any labor organization, or officer or employee thereof, which represents any of the employees. Likewise, § 302(b) outlaws the demand for or receipt of any such payment.

Section 302(c), however, provides seven specific exceptions to the foregoing prohibition: (1) Payments to employees for services rendered; (2) payments in satisfaction of judgments or awards; (3) payments for the purchase of commodities at the prevailing market price; (4) payments for employees' union dues; (5) payments to pension or welfare trust funds established in compliance with several specific provisions; (6) payments to certain vacation or severance trust funds or payments to defray training costs; and (7) payments to certain trust funds established to provide scholarships or child care centers for the benefit of employees.

Of particular import to the present controversy is the fifth exception. It exempts payments made "to a trust fund established . . . for the sole and exclusive benefit of the employees . . . and their families and dependents . . . ." The exception is operative provided (A) the payments are held for the purpose of medical or hospital care, pensions, unemployment compensation, or accident and health benefits; (B) the basis on which the payments are to be made is specified in a written agreement with the employer; the employees and employers are equally represented in the administration of the trust together with such neu-

tral persons as may be agreed upon; and provisions are included for an annual audit, the results of which shall be available for inspection by interested persons; and (C) payments intended for pensions or annuities for employees "are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities."

By section 302(d), wilful violation of any of the section's provisions is made a misdemeanor.

By section 302(e), district courts are granted jurisdiction, for cause shown:

". . . to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title [the Clayton Act], and the provisions of sections 101–115 of this title [the Norris-LaGuardia Act]."

■ Although it is ambiguous from the Complaint,[1] it is clear from the subsequent briefs and oral argument that plaintiffs consider § 302(c) (5) as the source of their cause of action. Specifically, they assert that, from the facts as stated, employers' contributions could not, at some point, have been used "solely for the purpose of assuring pension benefits to their employees." From this assertion it is argued that a cause of action exists. By way of relief, plaintiffs seek a court order requiring defendant-trustees to file an accounting of the District Council Trust's reserves in order to disclose the amount attributable to "contributions" from employers of Local # 1955's membership. Although the period of time to be covered by the proposed accounting is left unstated, presumably plaintiffs seek to recover all contributions since May 1, 1960 (the effective date of the District Council trust) rath-er than those made during the interval between the employees' withdrawal from their locals and the effective date of the Local # 1955 Trust (July 27, 1967 through April 30, 1968). The issue raised, therefore, is whether, taken alone, that portion of the language in § 302(c) (5) which requires pension and welfare trusts to be "established . . . for the sole and exclusive benefit" of employees was intended by Congress to constitute a standard of qualification for the establishment of trust funds or whether it was intended to constitute an enforceable condition to the continuing operation of such funds. As applied to the facts of the present case this Court is of the opinion that Congress intended only the former.

■ The interpretation of section 302 has had an unsettled history. Although it has been questioned, it is now firmly settled that by enacting section 302 Congress did not intend federal courts to fashion federal law concerning the *administration* of trust funds established pursuant to it. Moses v. Ammond, 162 F.Supp. 866, 870 (S.D.N.Y.1958); Sanders v. Birthright, 172 F.Supp. 895, 901 (S.D.Ind.1959); Employing Plasterer's Ass'n. of Chicago v. Journeymen, etc., 279 F.2d 92, 97 (7th Cir. 1960); Kane v. Shulton, Inc., 189 F.Supp. 882, 884 (D.N.J.1960); Lewis v. Hogwood, 112 U.S.App.D.C. 105, 300 F.2d 697, 698, n. 4 (1962); Holton v McFarland, 215 F.Supp. 372, 375 (D.Alaska 1963); Moyer v. Kirkpatrick, 265 F.Supp. 348, 351 (E.D.Pa.1967); Bowers v. Ulpiano Casal, Inc., 393 F.2d 421, 426 (1st Cir. 1968); Giordani v. Hoffmann, 295 F.Supp. 463, 470 (E.D.Pa.1969); and Porter v. Teamsters Health, Welfare and Life Ins. Funds of Phila., 321 F.Supp. 101, 103 (E.D.Pa.1970).[2]

---

1. Paragraph nine of the Complaint reads:
   "Plaintiffs herein have made demand upon the defendants to transfer the proper aliquot portion of the reserves of the District Council 21 Trust to them, but the defendants have failed and refused to do so. Section 302 of the Act requires that contributions by employers be used solely for the purpose of assuring pension benefits to their employees. This Civil Action is brought under the provisions of Section 301 of the Act."

2. The cases which have suggested that Congress intended federal courts to exercise broader jurisdiction are: Upholsterers In-

The majority of these cases dealt with the construction of subsection (e), particularly Congressional intent with regard to its breadth. In Moses v. Ammond, *supra*, disaffiliated members of a local union sought the termination of the local's welfare fund and a declaratory judgment distributing the corpus among its former members. It was held that subsection (e) did not vest federal courts with jurisdiction independent of 28 U.S.C. § 1337 which grants district courts original jurisdiction over civil actions arising under any Act of Congress regulating commerce without regard to citizenship or jurisdictional amount.[3] 162 F.Supp. at 871. Unlike the purpose of section 301(a) of the Labor Management Relations Act as construed in Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1959), the purpose of subsection (e) was held to be limited to the removal of the:

". . . [anti-injunction] bar of sections 6 and 20 of the Clayton Act, 38 Stat. 731, 738 (1914), 15 U.S.C.A. § 17, 29 U.S.C.A. § 52, and the [anti-injunction] bar of the Norris-La Guardia Act, 47 Stat. 70 (1932), as amended, 29 U.S.C.A. §§ 101–110, 113–115, so as to permit the courts of the United States, in cases in which jurisdiction was otherwise present, to *enjoin violations of subsections (a) and (b)* of 29 U.S.C.A. § 186." 162

F.Supp. 866, 870 (1958). (emphasis added)

The Court reasoned that since subsections (a) and (b) prohibit all payments between employers and any representatives of employees unless permitted by subsection (c), no cause of action existed because there was no claim that payments prohibited by subsections (a) or (b) had been made.[4] The resulting proposition, that federal courts are only empowered to restrain *violations* of section 302, has been firmly supported. Sanders v. Birthright, *supra*, 172 F. Supp. at 901; Employing Plasterer's Ass'n. of Chicago v. Journeymen, etc., *supra* 279 F.2d at 97; Kane v. Shuton, Inc., *supra* 189 F.Supp. at 884; Holton v. McFarland, *supra* 215 F.Supp. at 375; Moyer v. Kirkpatrick, *supra* 265 F.Supp. at 351; Bowers v. Ulpiano Casal, Inc., *supra* 393 F.2d at 424. Recognizing this principle, plaintiffs argue that the District Council Trust violates section 302 (c).

Both a fair reading of section 302 and its legislative history indicate that its purpose is "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers." United States v. Ryan, 225 F.2d 417, 426 (2d Cir. 1955) (Learned Hand, J. dissenting), rev'd 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). In Bowers, *supra*, the "violations" enjoinable by feder-

---

ter. Union of North America v. Leathercraft Furn. Co., 82 F.Supp. 570, 574–575 (E.D.Pa.1949) ; Copra v. Suro, 236 F.2d 107, 115 (1st Cir. 1956) (Contra, however, Bowers v. Ulpiano Casal, Inc., supra) ; In Re Bricklayers' Local No. 1 of Pa. Welfare Fund, 159 F.Supp. 37, 42 (E.D.Pa.1958) ; American Bakeries Co. v. Barrick, 162 F.Supp. 882, 885 (N.D.Ohio, 1958) ; and Raymond et al v. Hoffmann et al., 284 F.Supp. 596, 601–602 (E.D. Pa.1966).

3. This section reads as follows :
   "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against re-

straints and monopolies. June 25, 1948, c. 646, 62 Stat. 931."

4. "The complaint nowhere alleges that payments have been made by an employer *to* his employees' representatives in violation of § 186. Indeed, . . . the complaint alleges that the trust was established in conformity with § 186(c) (5), in which case the payments made would have been excepted from the ban of § 186(a) or (b). Nor is there any allegation that there is presently existing any agreement to make payments which could be enjoined as violative of § 186(a) or (b). In fact, . . . the complaint alleges that there are no employers who are presently required to contribute to the Welfare Fund." 162 F.Supp. at 873.

al courts through subsection (e) were construed to be:

" . . . violations of *basic structure*, as determined by the Congress, not violations of fiduciary obligations or standards of prudence in the administration of [trust funds]. . . . Such structural violations would consist of *contributions* to a trust fund which was not established for the sole and exclusive benefit of employees and dependents; . . ." 393 F.2d at 424. (emphasis added)

It was further held that subsection (e) only empowers federal courts to enjoin acts made criminal by subsections (a) and (b). Considering the foregoing in light of the section's general purpose it is clear that Congress was solely concerned with the regulation of conduct deemed criminal, and not with the regulation of disputes concerning the operation of pension and welfare funds.

■ In the present case, plaintiffs complain that employers' contributions to the District Council Trust have not been used "solely for the purpose of assuring pension benefits to their employees" as assertedly required by section 302. Plaintiffs have not alleged that the trust was *established* in violation of that section[5] nor have they alleged any alteration or amendment in the trust agreement itself that would create such a violation. See Porter v. Teamsters Health, Welfare and Life Ins. Funds of Phila., 321 F.Supp. 101 (E.D. Pa.1970). Therefore, to the extent that section 302 requires trust funds to be established for the sole and exclusive benefit of employees, plaintiffs have failed to state a federal cause of action. To the extent that plaintiffs argue for the existence of an independent federal remedy to correct trust funds that do not *operate* to the sole and exclusive benefit of employees they have also failed to state a cause of action. See

*Bowers, supra* 393 F.2d at 426. Although this Court is sensitive to the equities of the plaintiff's claim it is of the opinion that they would be better addressed to a state forum. Moses v. Ammond, *supra* 162 F.Supp. at 873–874; Raymond v. Hoffmann, *supra* 284 F. Supp. at 602, n. 14.

■ As indicated previously the claim that section 401(a) (7) of the Internal Revenue Code of 1954, 26 U.S.C. § 401(a) (7), creates a cause of action in the present case is without merit.

---

5. Even in Giordani v. Hoffmann, 295 F. Supp. 463 (E.D.Pa. 1969), heavily relied upon by plaintiffs, the court only recognized a cause of action arising from the allegation and prospective proof that the funds involved were not established for the sole and exclusive benefit of employees.