In the Matter of the Arbitration of TRUSTEES OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS, PRE-APPRENTICE, APPRENTICE AND JOURNEYMAN AFFIRMATIVE ACTION TRAINING FUNDS, A Trust.

No. 50892.

United States District Court
N. D. California.
July 22, 1969.

---

Kagel & Kagel, John Kagel, San Francisco, Cal., for petitioner.

McCarthy, Johnson & Miller, P. H. McCarthy, Jr., Pillsbury, Madison & Sutro, Charles F. Prael, Charles E. Voltz, San Francisco, Cal., for respondents.

ZIRPOLI, District Judge.

### MEMORANDUM OF DECISION AND ORDER

*Background:*

This case is before the Court on petition of Impartial Umpire, Sam Kagel, selected by the Union and Employer Trustees of a Trust designated as the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice and Journeyman Affirmative Action Training Fund. A dispute between the Trustees was submitted to the Umpire for decision. The issues presented were (1) whether the purposes of the Trust were valid, "and more particularly whether the phrase 'defraying costs of apprenticeship or other training program' 29 U.S.C. § 186(c) (6) includes expenditure of trust funds" for the purposes of the Trust Fund; (2) or whether issue (1) should in the first instance be submitted to the United States District Court under 29 U.S.C. § 185 or 29 U.S.C. § 186, or both for a decision on issue (1). If the Umpire decided that issue (1) should be referred to the District Court the Trustees authorized him to petition the Court in their behalf.

The Umpire's decision was "[t]hat such judicial determination is necessary to ascertain the validity of the Trust and the proposed implementing Memorandum of Agreement [of the Trust] in light of the federal labor laws."

*Court Jurisdiction:*

■ In response to the Umpire's Petition, appearances were entered by the Union, three Employer Associations and the Trustees. The Court found that the record as it then existed presented a controversy concerning the validity of the trust purposes and the effect of Section 302 of the Taft-Hartley Act (29 U.S.C. § 186) thereon. As such, judicial determination of the questions raised is proper. See International Longshoremen's Association v. Seatrain Lines, 326 F.2d 916 (2d Cir. 1964).

*The Trust:*

Collective bargaining agreements between the Union, Operating Engineers Local 3 and Employer Associations whose members employ operating engineers provide for contributions by the Employers of 5 cents per man hour effective June 15, 1968, 9 cents per hour effective July 1, 1969 and 14 cents per hour effective a year thereafter. It is expected that contributions to this Trust over the next 3 years could total approximately nine million dollars.

The Trust provides for administration by an equal number of Employer-appointed and Union-appointed Trustees; for deadlocks to be broken by an impartial Umpire agreed to by the Trustees for such purposes; for petition to the United States District Court in the event that an Umpire cannot be agreed to; and contains provisions for annual audits, the results of which are available for inspection by all interested persons.

*Implementing Agreement:*

This Agreement between the parties provides that the implementation of the Trust purposes will be in part carried out through Job Placement Centers. The Union as such will directly provide a number of these services.

*The Law Questions:*

Whether the Employer contributions to the Fund are for the purposes of a Trust that comes within the stated exception of Section 302(c) (6) of "defraying costs of apprenticeship or other training program."

Whether Trust Fund monies can be used to defray expenses incurred by the Union in carrying out the purposes of the Trust at the request of the Trustees.

*The Trust Purposes:*

Generally the Trust was established to provide training and retraining of employees now in the industry and working in the job classifications included in the collective bargaining agreements. The great advance in technology in the construction industry requires greater skills of present and prospective employees.

Of equal importance is the training and education of individuals, particularly disadvantaged persons, as new additions to the work force.

Accordingly, the parties agreed to establish a Trust Fund for the following purposes:

"This Fund shall provide for the training (including education) of individuals on work and in job classifications covered by Collective Bargaining Agreements and Safety.

"Such training shall include but not be limited to:

"1. Seeking individuals capable of being trained (including disadvantaged persons who may require special education and training);

"2. Training such individuals in work and safety (including education where necessary or advisable);

"3. Retraining of individuals to (a) improve their present skills, or (b) develop new skills, or (c) both; all to the end that there may be an adequate and competent supply of skilled employees to man the jobs of individual employers so that they may provide sound, safe and efficient services to the public at the lowest possible costs.

"4. Locating existing employment opportunities for pre-apprentices, apprentices and journeyman trainees.

"5. Creating or seeking to create employment opportunities for pre-apprentices, apprentices and journeyman

trainees in the public and private domain;

"6. Equitable distribution of employment available at any given time to pre-apprentices, apprentices and journeyman trainees, taking into account years of service, skill, protection of employment opportunities of employees and the needs and problems of the employer and the industry involved;

"7. Directing the placement of pre-apprentices, apprentices and journeyman trainees in available employment, i. e., the registering and dispatching of such individuals to available employment;

"8. Determination, insofar as possible, of the future needs of the Individual Employers for persons skilled in various work and classifications.

"In carrying out the foregoing, there shall be no discrimination in favor of or against any individual by reason of sex, race, creed, color, national origin, age or membership or non-membership in any union or labor organization; nor shall the carrying out of the purpose and intent of this Trust be based or in any way affected by sex, race, creed, color, national origin, age or union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of union membership, policies or requirements; provided, however, that union membership of an individual shall be in accordance with all applicable laws and lawful collective bargaining agreements.

"Also, all operations financed or supported by the Fund shall be in complete compliance with applicable Federal and State laws concerning the training, upgrading and employment of all persons regardless of race, creed, color, sex or national origin, including minority groups or persons.

*Section 302:*

Section 302 of the Taft-Hartley Act outlaws payments from employers to union representatives (including pay-ments into trust funds on which sit Union-appointed trustees) except under certain circumstances. Section 302 provides in pertinent part:

"Sec. 302(a). It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;

\* \* \* \* \* \*

"(c) The provisions of this section shall not be applicable \* \* \* (6) with respect to money or other things of value paid by an employer to a trust fund established by such representative for the purpose of \* \* \* defraying costs of apprenticeship or other training programs; Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds."

Section 302 (c) (5) (B) referred to in the above-quoted section reads:

"(B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empow-

ered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement' * * *.''

*Section 302(c) (6) and the Trust Purposes:*

The basic question presented is whether the purposes of the trust come within the stated exception of Section 302(c) (6)—"defraying costs of apprenticeship or other training programs."

The purposes of Congress in adding Section (c) (6) to Section 302 were expressed as follows:

### "APPRENTICESHIPS AND TRAINING PROGRAMS"

"The provision of an adequate supply of skilled labor in American industry is dependent upon the proper functioning of apprenticeship and training programs. These programs are supported by Federal law which vests certain responsibilities in the U. S. Department of Labor. Many of these programs are financed by employer contributions and union contributions. However, Section 302 of the Labor Management Relations Act of 1947, as amended, is written in such manner that it creates a doubt as to the legality of employer contributions to joint trust funds for apprenticeship and training programs. The committee bill contains an amendment to Section 302 of the Labor Management Relations Act, which makes it clear that

defraying the costs of apprenticeship or other training programs is a permissible object of a joint trust fund to which an employer makes contributions." (H.Rep. No. 741 on H.R. 8342, p. 23, Legislative History, Labor-Management Reporting and Disclosure Act of 1959, 781 (N.L.R.B.) 2, U.S.Code Cong. & Admin.News 1959, p. 2445.)

Since that amendment federal legislation, executive orders and adminstrative regulations bearing on the problem of training, including training of disadvantaged individuals to facilitate such persons' entry into the construction industry, have been promulgated. See, e. g., Housing and Urban Development Act of 1968, Section 3, P.L. 90–448 (1968), Executive Order 11246, Section 202 (1965) as amended by E.O. 11375 (1967), Federal Highway Administration order Interim 7–2(1), March 17, 1969.

The result has been that now "affirmative action" is required in recruiting such persons and providing them with supplementary education as "pre-apprentices" *to allow them to then enter apprentice training on an equal footing with all applicants for apprenticeship.*

In this context, including the fact that apprenticeship and other training programs are proper subjects of employer-union trusts, the purposes of the Trust as stated therein meet the definition of "defraying costs of apprenticeship and other training programs" as stated in Section 302(c) (6). Furthermore, the stated purposes of the Trust conforms to the stated objective of legislation which deals with the problems of disadvantaged persons.

█ Purposes 1 through 3 pose no problem concerning their inclusion in the exception of Section 302(c) (6). The training programs allowed under that exception include both present and prospective employees. Section 302(c) (6) is not limited by its terms only to present "employees." Moreover, not only was such a limitation as found in initial bills eliminated in the final enactment of the Section 302(c) (6), (Legislative History, *supra,* pp. 54, 141, 365, 545, 971), but to

judicially create that limitation would be an unjustified hampering of the later enacted legislative, executive and administrative policy. See Garvison v. Jensen, 355 F.2d 487 (9th Cir. 1965), Blassie v. Kroger Co., 345 F.2d 58 (8th Cir. 1965).

■ Purposes 4 through 8 are not only complementary but necessary for the training programs to be any more than fruitless tokens. These purposes, being limited to aiding trainees, represent the necessary attempts to fulfill trainees' "rising expectations" and to insure that an individual who trains or retrains is doing so to fill a need. It should be unnecessary to state that it makes no sense to train persons to fill jobs that are already filled or for which there are no opportunities for employment. Consequently, purposes 4 through 8 must be accepted as part of the "costs" of even the most minimally adequate "apprenticeship or other training programs" provided for by Section 302(c) (6).

Purposes 4 through 8 as written are limited to affecting job opportunities for pre-apprentices, apprentices and journeymen trainees. As such they are not on their face prohibited "industry-promoting" trust funds. See Local No. 2 of Operative Plasterers, etc. v. Paramount Plastering, Inc., 310 F.2d 179 (9th Cir. 1962), Mechanical Contractors Assn. of Philadelphia v. Local Union 420, 265 F. 2d 607 (3d Cir. 1959), Sheet Metal Contractors Assn. v. Sheet Metal Workers, 248 F.2d 307 (9th Cir. 1957), Conditioned Air & Refrig. Co. v. Plumbing and Pipefitting, etc., 159 F.Supp. 887, (N.D.Calif. 1956) aff'd 253 F.2d 427 (9th Cir. 1958). They appear to be part and parcel of any meaningful training program.

*Section 302(c) (5) (B):*

Even if a trust fund is for purposes authorized in Section 302(c) (6), it still must meet the requirements of Section 302(c) (5) (B). The Trust, as outlined above meets these requirements.

*Implementing Memorandum Agreement:*

A final question concerns a proposed memorandum to be entered into by the Trustees and the Union that would result in compensating the Union for services rendered to the Trust. That Memorandum Agreement provides in pertinent part:

1. "That the Operating Engineers Local Union No. 3 will:

"(a) Perform such duties as may be assigned it by the Affirmative Action Fund Trustees in carrying out its purpose and intent.

"(b) Keep such records as may be determined by the Affirmative Action Fund which records shall be open for inspection by authorized representatives of the Trustors and Trustees and all appropriate Federal and State Agencies at all reasonable times.

"2. (a) The Union recognizes the relations of trust and confidence with the Fund established by this Agreement and covenants to furnish its best skill and judgment in performing hereunder. It further agrees to furnish efficient business administration in performing hereunder, and to perform in the best and soundest way, and in the most expeditious and economical manner.

"(b) The Fund shall reimburse the Union for any cost necessarily and directly incurred in rendering services hereunder including the cost of administrative supporting services but excluding the cost of data processing programing to date and all overhead and expenses not necessarily and directly incurred in rendering services hereunder.

"(c) With respect to those services and duties assigned hereunder which require an allocation of cost:

"1. The Union will submit to the Board of Trustees a proposed method of calculating and allocating such costs.

"2. The Board of Trustees shall review such submission and approve or modify such submission and if the Board of Trustees is unable to agree, the Umpire, under the parties' submission agreement dated January 9, 1969, shall mediate the matter and if unable

to obtain agreement, shall make a final and binding decision.

"(d) Payment shall be made upon billing by the Union subject to audit by a Certified Public Accountant selected by the Fund.

"(e) In the event of the Union's refusal to accept any decision or decisions of the Trustees or Umpire, this agreement shall terminate ninety (90) days after such refusal absent agreement to the contrary by the Fund and the Union, and the Fund shall only be obligated to pay such amounts as are approved by the Trustees or umpire.

"After the first full year of operation, the Union shall monthly be paid an amount estimated by the Trustees or Umpire for such costs subject to appropriate adjustment after each semi-annual audit."

This Agreement is to be entered into because the Union is in a position to provide services to the Trust with respect to job opportunities and training programs for pre-apprentices, apprentices and journeyman trainees, and because such services could increase the Union's costs. In Ware v. Adams, 53 LRRM 2290 (S.D.Calif. No. 1486–61, 1963) the Court found that payments by an otherwise valid trust fund to a Union represented on the trust for services rendered for data processing, mail handling and telephone services did not violate Section 302. There, as in this case, where such services are paid for at their fair value and independent accounting was provided for, no violation of the Section 302 was found. Moreover, the parties here have already appointed an Impartial Umpire who shall make a final decision on any points of difference that may develop between the Trustees as to the sums to be paid the Union.

*Findings:*

It is, therefore, found that the purposes of the Trust as stated in the Trust instrument are valid within the terms of applicable law. And it is found that Trust Fund monies may be used to defray expenses incurred by the Union in properly carrying out the purpose of the Trust.

*Decision and Order:*

The Trust Agreement and its proposed implementing Memorandum Agreement are lawful and not, in violation of Section 302 of the Labor Management Relations Act, as amended, 29 U.S.C. § 186.

The Court having found the Trust Agreement and its proposed implementing Memorandum Agreement to be lawful, wishes it to be clearly and emphatically understood by all parties that it is one thing for a Union and the Employers to agree to the commendable purposes incorporated in this Affirmative Action Training Fund, and another thing to affirmatively carry out such purposes. *It is to be expected, and it is a proper continuing concern of the Court, that the purposes of the Trust will be vigorously and completely carried out by the Union and the Employers.*